# AMENDMENTS TO THE SENTENCING GUIDELINES

Pursuant to section 994(p) of title 28, United States Code, the United States Sentencing Commission hereby submits to the Congress the following amendments to the *Guidelines Manual* and the reasons therefor. As authorized by such section, the Commission specifies an effective date of November 1, 2023, for these amendments.

## Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index

1.   **Amendment:** Section 1B1.13 is amended—

by inserting at the beginning the following new heading: "(a) *In General*.—";

by striking "Bureau of Prisons under" and inserting "Bureau of Prisons or the defendant pursuant to";

and by inserting at the end the following:

"(b)   *Extraordinary and Compelling Reasons*.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

   (1)   *Medical Circumstances of the Defendant*.—

      (A)   The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

      (B)   The defendant is—

         (i)   suffering from a serious physical or medical condition,

         (ii)   suffering from a serious functional or cognitive impairment, or

         (iii)   experiencing deteriorating physical or mental health because of the aging process,

      that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

 (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

 (D) The defendant presents the following circumstances—

  (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

  (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

  (iii) such risk cannot be adequately mitigated in a timely manner.

(2) *Age of the Defendant*.—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(3) *Family Circumstances of the Defendant*.—

 (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

 (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

 (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

 (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family

member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

(4)   *Victim of Abuse*.—The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

   (A)   sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or

   (B)   physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1 (Application Instructions);

   that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.

   For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

(5)   *Other Reasons*.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6)   *Unusually Long Sentence*.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

(c)   *Limitation on Changes in Law*.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a

change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

(d)     *Rehabilitation of the Defendant*.—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

(e)     *Foreseeability of Extraordinary and Compelling Reasons*.—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.".

The Commentary to §1B1.13 captioned "Application Notes" is amended—

by striking Notes 1 through 5 as follows:

"1.     *Extraordinary and Compelling Reasons*.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)     *Medical Condition of the Defendant*.—

(i)     The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)     The defendant is—

(I)     suffering from a serious physical or medical condition,

(II)     suffering from a serious functional or cognitive impairment, or

(III)     experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)   *Age of the Defendant*.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)   *Family Circumstances*.—

(i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)   *Other Reasons*.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

2.   *Foreseeability of Extraordinary and Compelling Reasons*.—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

3.   *Rehabilitation of the Defendant*.—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.

4.   *Motion by the Director of the Bureau of Prisons*.—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law.

5.  *Application of Subdivision (3)*.—Any reduction made pursuant to a motion by the Director of the Bureau of Prisons for the reasons set forth in subdivisions (1) and (2) is consistent with this policy statement.";

and by inserting the following new Notes 1 and 2:

"1.  *Interaction with Temporary Release from Custody Under 18 U.S.C. § 3622 ('Furlough')*.—A reduction of a defendant's term of imprisonment under this policy statement is not appropriate when releasing the defendant under 18 U.S.C. § 3622 for a limited time adequately addresses the defendant's circumstances.

2.  *Notification of Victims*.—Before granting a motion pursuant to 18 U.S.C. § 3582(c)(1)(A), the Commission encourages the court to make its best effort to ensure that any victim of the offense is reasonably, accurately, and timely notified, and provided, to the extent practicable, with an opportunity to be reasonably heard, unless any such victim previously requested not to be notified.".

The Commentary to §1B1.13 captioned "Background" is amended by striking "the Commission is authorized" and inserting "the Commission is required".

**Reason for Amendment:** This amendment responds to, among other things, the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239, which amended 18 U.S.C. § 3582(c)(1)(A) to authorize courts to grant a motion for a sentence reduction upon a defendant's own motion. Previously, a court was authorized to do so only upon the motion of the Director of the Bureau of Prisons ("BOP"). Congress amended the law for the express purpose, set forth on the face of the enactment, of "increasing the use" of sentence reduction motions under section 3582(c)(1)(A). First Step Act § 603(b).

Section 3582(c)(1)(A) authorizes a court to reduce a defendant's term of imprisonment if "extraordinary and compelling reasons" warrant a reduction and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Congress directed the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." Sentencing Reform Act of 1984 ("SRA"), Pub. L. No. 98–473, 98 Stat. 1987, 2023 (codified at 28 U.S.C. § 994(t)). Congress also directed the Commission to promulgate general policy statements regarding the appropriate use of section 3582(c). 28 U.S.C. § 994(a)(2)(C).

For more than 30 years, reductions pursuant to section 3582(c)(1)(A) could be granted only upon the motion of the BOP. BOP filed such motions extremely rarely—the number of defendants receiving relief averaged two dozen per year—and for the most part limited its motions to cases involving inmates who were expected to die within a year or were

profoundly and irremediably incapacitated. U.S. Dep't of Just., Off. of the Inspector Gen., The Federal Bureau of Prisons' Compassionate Release Program, I-2013-006 1 & n.9 (2013).

Sentence reductions under section 3582(c)(1)(A) thus came to be known as "compassionate release," though that phrase appears nowhere in the SRA and sentence reductions that do not result in immediate release are authorized by the law. BOP's sparing use of its authority persisted despite guidance from the Commission in 2007 that "extraordinary and compelling reasons" can be based on (a) the medical condition of the defendant, (b) the age of the defendant, (c) the defendant's family circumstances, and (d) reasons other than, or in combination with, those three specified ones. USSG App. C, amend. 698 (effective Nov. 1, 2007).

In 2018, the First Step Act put an end BOP's gatekeeping function and allowed individuals to file motions for sentence reductions under the statute. Because the Commission lost its quorum in early 2019 and did not regain it until 2022, it was unable to amend §1B1.13 during the more than four-year period since defendants were first permitted to file such motions. During those years, courts have found extraordinary and compelling reasons warranting sentence reductions based on all of the factors the Commission identified in 2007, *i.e.*, the three specified bases of medical condition, age, and family circumstances, and the "other reasons" catchall. Commission data indicate courts have hewed to the "extraordinary and compelling" requirement, *see* U.S. SENT'G COMM'N, COMPASSIONATE RELEASE DATA REPORT (Dec. 2022), at tbls. 10, 12, & 14, and while they have found such circumstances to be present in more cases than BOP had before the First Step Act, they have been judicious in granting relief.

Among other things, the amendment extends the applicability of the policy statement to defendant-filed motions; expands the list of specified extraordinary and compelling reasons that can warrant sentence reductions; retains the existing "other reasons" catchall; provides specific guidance with regard to the permissible consideration of changes in the law; and responds to case law that developed after the enactment of the First Step Act.

The amendment is informed by Commission data, including its analysis of the factors identified by courts in granting sentence reduction motions in the years since the First Step Act was signed into law. It is also informed by extensive public comment, including from the Department of Justice, the Federal Public and Community Defenders, the Commission's advisory groups, law professors, currently and formerly incarcerated individuals, and other stakeholders in the federal criminal justice system.

*Applicability to Defendant-Filed Motions and Structural Revisions*

The amendment revises §1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making the policy statement applicable to both defendant-filed and BOP-filed motions.

The amendment also makes two structural changes to §1B1.13. First, it moves the description of the permissible bases for a reduction from the Commentary to the policy statement itself.

Second, the amendment moves Application Notes 2 and 3 into the body of the policy statement as new subsections (e) and (d). Application Note 3 previously provided that, pursuant to 28 U.S.C. § 994(t), rehabilitation of a defendant is not, by itself, an extraordinary and compelling reason for purposes of §1B1.13. New subsection (d) adopts this same language but adds, consistent with the plain language of section 994(t) and courts' interpretations of it, that rehabilitation of the defendant while incarcerated may be considered *in combination* with other circumstances in determining whether extraordinary and compelling reasons warrant a sentence reduction. *See* U.S. SENT'G COMM'N, COMPASSIONATE RELEASE DATA REPORT (Dec. 2022), tbls. 10, 12 & 14 (showing that courts have frequently considered rehabilitation in connection with other factors when granting sentence reduction motions). Application Note 2 provided that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." New subsection (e) retains this instruction without change.

*Revisions to "Extraordinary and Compelling Reasons"*

The amendment expands the list of specified extraordinary and compelling reasons and retains the "other reasons" basis for a sentence reduction to better account for and reflect the plain language of section 3582(c)(1)(A), its legislative history, and decisions by courts made in the absence of a binding policy statement.

The list of specified "extraordinary and compelling reasons" is expanded by: (a) adding two new subcategories to the "Medical Circumstances of the Defendant" ground for relief; (b) making three modifications to the "Family Circumstances" ground; (c) adding a new ground called "Victim of Abuse"; and (d) adding a new ground called "Unusually Long Sentence," which permits a judge to consider a non-retroactive change in sentencing law as an extraordinary and compelling reason in specified circumstances.

The first of the two new subcategories under "Medical Circumstances of the Defendant" applies when a defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided" and who, without that care, "is at risk of serious deterioration in health or death." The second applies when a defendant, due to personal health risk factors and custodial status, is at increased risk of suffering severe medical complications or death as a result of exposure to an ongoing outbreak of infectious disease or public health emergency. The amendment incorporates several factors courts considered during the COVID-19 pandemic related to the defendant's individual health circumstances, the level of risk at the defendant's facility, and the ability to adequately mitigate the defendant's individualized risk. The public health emergency prong requires that the emergency be declared by the appropriate governmental authority. These new subcategories reflect the medical circumstances not expressly identified in §1B1.13 that were most often cited by courts in granting sentence

reduction motions during the pandemic. *See* U.S. SENT'G COMM'N, COMPASSIONATE RELEASE DATA REPORT (Dec. 2022) tbls. 10, 12 & 14.

The second modification to the list of specified extraordinary and compelling reasons revises the "Family Circumstances" ground in three ways. First, it expands the existing provision relating to the death or incapacitation of the caregiver of a defendant's minor child to include a child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition. This expansion reflects the Commission's determination that providing care for a non-minor child with severe caretaking needs presents a circumstance similar to providing care for a minor child, as some courts have recognized. *See, e.g.*, *United States v. Barnes*, No. 3:17-cr-00011, 2021 WL 1269783, at \*4 (S.D. Ind. Jan. 29, 2021) (granting a sentence reduction to a defendant whose 21-year-old son had numerous physical and mental disabilities that required 24-hour care, finding these circumstances "to be analogous to a minor child"). Second, the amendment adds a new provision for cases in which a defendant's parent is incapacitated and the defendant would be the only available caregiver. Other than the relationships specified in the current policy statement, a parent has been the family member most often identified as needing care by courts granting sentence reductions under § 3582(c)(1)(A). *See* U.S. SENT'G COMM'N, COMPASSIONATE RELEASE: THE IMPACT OF THE FIRST STEP ACT AND COVID-19 PANDEMIC (2022), at 32; *see also United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) (concluding that there is "no reason to discount" a defendant's caregiving role "simply because the incapacitated family member is a parent and not a spouse," registered partner, or minor child). The third modification to the family circumstances ground for relief adds a provision that applies when the defendant establishes that similar circumstances exist with respect to a person whose relationship with the defendant is similar in kind to that of an immediate family member, and the defendant would be the only available caregiver. This provision recognizes the diversity of family structures in America, and that caretaking needs within all of those family structures may give rise to equally extraordinary and compelling circumstances. The amendment accords with decisions by courts after the First Step Act. *See, e.g.*, *United States v. Griffin*, No. 1:95-cr-00751, 2020 WL 7295765, at \*2–3 (S.D. Fla. Dec. 8, 2020) (granting release because the defendant was "the only viable, adequate caregiver for his sister" who had significant cognitive impairment due to vascular dementia and stroke); *United States v. Reyes*, No. 04-cr-970, 2020 WL 1663129, at \*3 (N.D. Ill. Apr. 3, 2020) (granting defendant relief to assist in caring for his aunt with stage four cancer, recognizing "non-traditional family arrangements and the need for others in the family to contribute when a relative is sick"). Relief is available under this subsection only if the defendant establishes both the qualifying relationship and that the defendant is the only available caregiver.

The third modification to the list of specified extraordinary and compelling reasons adds a ground for relief at new subsection (b)(4) ("Victim of Abuse"), which applies if a defendant has suffered sexual or physical abuse that was committed by or at the direction of a correctional officer, an employee or contractor of the BOP, or any other individual having custody or control over the defendant. This provision responds to the Department of Justice's ("DOJ") suggestion that a sentence reduction may be appropriate where an

individual in BOP custody has been determined to have been the victim of sexual assault perpetrated by BOP personnel. PRINCIPAL ASSOC. DEPUTY ATT'Y GEN. WORKING GRP. OF DOJ COMPONENTS, DEP'T OF JUST., REPORT AND RECOMMENDATIONS CONCERNING THE DEPARTMENT OF JUSTICE'S RESPONSE TO SEXUAL MISCONDUCT BY EMPLOYEES OF THE BUREAU OF PRISONS 22 (2022); *see also* STAFF OF PERMANENT S. SUBCOMM. ON INVESTIGATIONS, 117TH CONG., REP. ON SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (Comm. Print 2022) (summarizing results of investigation into sexual abuse of federal prisoners in BOP custody). New subsection (b)(4) is limited to instances in which the defendant was a victim of either (a) sexual abuse involving a "sexual act," as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or (b) physical abuse resulting in "serious bodily injury," as defined at §1B1.1, while in custody serving the term of imprisonment sought to be reduced. New subsection (b)(4) provides that the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless the defendant establishes that such proceedings are unduly delayed or the defendant is in imminent danger.

Apart from the specified extraordinary and compelling reasons, the amendment retains the "Other Reasons" catchall ground currently found in Application Note 1(D). It also makes clear that extraordinary and compelling reasons exist if the defendant presents any other circumstance or combination of circumstances that, considered by themselves or together with any of the reasons specified in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4). The Commission considered but specifically rejected a requirement that "other reasons" be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity, a requirement that inheres in the statutory requirement that they present extraordinary and compelling reasons for a sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A).

The Commission recognized that during the period between the enactment of the First Step Act in 2018 and this amendment, district courts around the country based sentence reductions on dozens of reasons and combinations of reasons. Based on a careful review of those cases, the Commission continues to believe what is stated in Application Note 4 to the current policy statement, *i.e.*, that judges are "in a unique position to determine whether the circumstances warrant a reduction." Guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts, rather than through an effort by the Commission to predict and specify in advance all of the grounds on which relief may be appropriate.

The fifth modification to the list of specified extraordinary and compelling reasons appears in new subsection (b)(6) ("Unusually Long Sentence") and permits non-retroactive changes in law (other than non-retroactive amendments to the Guidelines Manual) to be considered extraordinary and compelling reasons warranting a sentence reduction, but only in narrowly circumscribed circumstances. Specifically, where (a) the defendant is serving an unusually long sentence; (b) the defendant has served at least ten years of the sentence; and (c) an intervening change in the law has produced a gross

disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, the change in law can qualify as an extraordinary and compelling reason after the court has fully considered the defendant's individualized circumstances.

One of the expressed purposes of section 3582(c)(1)(A) when it was enacted in 1984 was to provide a narrow avenue for judicial relief from unusually long sentences. S. REP. NO. 98–225 (1983). Having abolished parole in the interest of certainty in sentencing, Congress recognized the need for such judicial authority. In effect, it replaced opaque Parole Commission review of every federal sentence with a transparent, judicial authority to consider reducing only a narrow subset of sentences—those presenting "extraordinary and compelling" reasons for a reduction.

Subsections (b)(6) and (c) operate together to respond to a circuit split concerning when, if ever, non-retroactive changes in law may be considered as extraordinary and compelling reasons within the meaning of section 3582(c)(1)(A). *Compare United States v. Ruvalcaba*, 26 F.4th 14, 16, 26–28 (1st Cir. 2022) (holding that non-retroactive changes in sentencing law may be considered in light of a defendant's particular circumstances), *United States v. McCoy*, 981 F.3d 271, 286–88 (4th Cir. 2020) (same), *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022) (same), *and United States v. McGee*, 992 F.3d 1035, 1047–48 (10th Cir. 2021) (same), *with United States v. Andrews*, 12 F.4th 255, 260–62 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 1446 (2022) (holding that non-retroactive changes in law are not permissible considerations), *United States v. McMaryion*, 64 F.4th 257, 259–60 (5th Cir. 2023) (same), *United States v. McCall*, 56 F.4th 1048, 1061 (6th Cir. 2022) (en banc) (same) , *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) (same), *United States v. Crandall*, 25 F.4th 582, 585–86 (8th Cir. 2022) (same), *and United States v. Jenkins*, 50 F.4th 1185, 1198, 1198 (D.C. Cir. 2022) (same).

The Commission considered whether the foregoing split among the circuit courts of appeals was properly addressed by the Commission, which typically resolves such disagreements when they relate to its guidelines or policy statements, *see Braxton v. United States*, 500 U.S. 344 (1991), or by the Supreme Court. In making that determination, the Commission was influenced by the fact that on several occasions the Department of Justice successfully opposed Supreme Court review of the issue on the ground that it should be addressed first by the Commission. *See, e.g.*, Brief For the United States in Opposition to Grant of Certiorari, *Jarvis v. United States*, No. 21-568, 2021 WL 5864543 (U.S. Dec. 8, 2021); Memorandum For the United States in Opposition to Grant of Certiorari, *Watford v. United States*, No. 21-551, 2021 WL 5983234 (U.S. Dec. 15, 2021); Memorandum For the United States in Opposition to Grant of Certiorari, *Williams v. United States*, No. 21-767, 2022 WL 217947 (U.S. Jan. 24, 2022); Memorandum For the United States in Opposition to Grant of Certiorari, *Thacker v. United States*, No. 21-877, 2022 WL 467984 (U.S. Feb. 14, 2022).

The amendment agrees with the circuits that authorize a district court to consider non-retroactive changes in the law as extraordinary and compelling circumstances warranting a sentence reduction but adopts a tailored approach that narrowly limits that principle in

multiple ways. First, it permits the consideration of such changes only in cases involving "unusually long sentences," which the legislative history to the SRA expressly identified as a context in which sentence reduction authority is needed. *See* S. Rep. No. 98–225, at 55 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3238–39. ("The Committee believes that there may be unusual cases in which the eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender [sic] was convicted have been later amended to prove a shorter term of imprisonment.")). Second, the change in law itself may be considered an extraordinary and compelling reason only where it would produce a gross disparity between the length of the sentence being served and the sentence likely to be imposed at the time the motion is filed. Finally, to address administrative concerns raised by some commenters, the amendment limits the application of this provision to individuals who have served at least 10 years of the sentence the motion seeks to reduce. Commission data show that between fiscal year 2013 and fiscal year 2022, fewer than 12 percent (11.5%) of all offenders were sentenced to a term of imprisonment of ten years or longer.

Subsection (b)(6) excludes from consideration as extraordinary and compelling reasons warranting a reduction in sentence changes to the Guidelines Manual that the Commission has not made retroactive. Public comment requested that the Commission clarify the interaction between §1B1.13 and §1B1.10, and the Commission determined that excluding non-retroactive changes to the guidelines from consideration as extraordinary and compelling reasons was consistent with §1B1.10 and the Supreme Court's decision in *Dillon v. United States*, 560 U.S. 817 (2010).

To more fully address the proper role of changes in law in this context, the amendment also adds a new subsection (c) to the policy statement. Whereas subsection (b)(6) narrowly limits the circumstances in which a non-retroactive change in the law can constitute an extraordinary and compelling reason that itself can warrant a reduction in sentence, subsection (c) of the amended policy statement governs the use of changes in the law in cases where a defendant "otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction." In those circumstances, *all* changes in law, including non-retroactive amendments to the Guidelines Manual, may properly be considered in determining the extent of a sentencing reduction. For example, a defendant's motion may present the following circumstances: (a) commendable rehabilitation while incarcerated; (b) the offense conduct occurred when the defendant was in his late teens or early twenties; and (c) pursuant to intervening legislation or intervening Guidelines amendments, the sentence likely to be imposed at the time of the motion would be lower than the sentence being served, but not grossly so. In those circumstances, the change in law could not properly be considered an extraordinary and compelling reason warranting a reduction in sentence. However, if the court determines that the combination of the other two factors constitutes an extraordinary and compelling reason, the change in law is among the broad array of factors that may properly be

considered in determining the extent of any such reduction. This aspect of the amendment is fully consistent with *Concepcion v. United States*, 142 S. Ct. 2389 (2022).

Finally, the requirements in subsection (b)(6) that the defendant be serving an unusually long sentence and have served at least ten years of such sentence are not applicable to cases not covered by that subsection. Those requirements apply only when a defendant seeks to have a non-retroactive change in law itself be considered an extraordinary and compelling reason warranting a reduction in sentence.

### *New Application Notes Regarding Interaction with 18 U.S.C. § 3622 and Notification of Victims*

The amendment also adds two new application notes to the Commentary to §1B1.13. New Application Note 1 provides that a reduction under this policy statement is not appropriate when temporary release under 18 U.S.C. § 3622 (a furlough granted by the Bureau of Prisons) "adequately addresses" the defendant's circumstances. This new application note responds to public comment, including comment from the Criminal Law Committee for the Judicial Conference of the United States, urging the Commission to clarify that this policy statement is not intended to address temporary medical or family circumstances that a BOP-granted furlough adequately addresses.

New Application Note 2 "encourages the court to make its best effort to ensure that any victim of the offense is reasonably, accurately, and timely notified, and provided, to the extent practicable, with an opportunity to be reasonably heard, unless any such victim previously requested not to be notified." Although § 3582(c)(1)(A) does not require a court to conduct a public court proceeding before resolving a motion, and in many cases the passage of time can make victim identification and notification difficult, the Commission encourages the court to make its best effort to notify any victims and, to the extent public court proceedings are held, afford them an opportunity to be heard, unless the victim previously requested not to be notified.

### *Conforming Changes*

Finally, as conforming changes, the amendment deletes Application Notes 4 and 5 and makes a minor technical change to the Background Commentary. Application Note 4 reflected that only the Bureau of Prisons could file a motion under 18 U.S.C. § 3582(c)(1)(A) before the First Step Act and, as such, "encourage[d] the Director of the Bureau of Prisons to file such a motion." Application Note 5 provided that "[a]ny reduction made pursuant to a motion by the Director of the Bureau of Prisons for the reasons set forth in subdivisions (1) and (2) is consistent with this policy statement." These two application notes were deleted because a motion by the Director of the Bureau of Prisons is no longer required after the enactment of the First Step Act. The Background Commentary is also amended to reflect that the Commission is "required," as opposed to "authorized," to "describe what should be considered extraordinary and compelling reasons for sentence reduction."

**2.**     **Amendment:** The Commentary to §2A2.4 captioned "Statutory Provisions" is amended by striking "18 U.S.C. §§ 111" and inserting "18 U.S.C. §§ 40A, 111".

Section 2A5.2 is amended in the heading by striking "Vehicle" and inserting "Vehicle; Unsafe Operation of Unmanned Aircraft".

The Commentary to §2A5.2 captioned "Statutory Provisions" is amended by striking "18 U.S.C. § 1992(a)(1)" and inserting "18 U.S.C. §§ 39B, 1992(a)(1)".

The Commentary to §2B1.1 captioned "Statutory Provisions" is amended by striking "7 U.S.C. §§ 6, 6b, 6c, 6h, 6o, 13, 23; 15 U.S.C. §§ 50, 77e, 77q, 77x, 78j, 78ff, 80b-6, 1644, 6821; 18 U.S.C. §§ 38, 225, 285–289, 471–473, 500, 510, 553(a)(1), 641, 656, 657, 659, 662, 664, 1001–1008, 1010–1014, 1016–1022, 1025, 1026, 1028, 1029, 1030(a)(4)– (5), 1031, 1037, 1040, 1341–1344, 1348, 1350, 1361, 1363, 1369, 1702, 1703 (if vandalism or malicious mischief, including destruction of mail, is involved), 1708, 1831, 1832, 1992(a)(1), (a)(5), 2113(b), 2282A, 2282B, 2291, 2312–2317, 2332b(a)(1), 2701; 19 U.S.C. § 2401f; 29 U.S.C. § 501(c); 42 U.S.C. § 1011; 49 U.S.C. §§ 14915, 30170, 46317(a), 60123(b)", and inserting "5 U.S.C. §§ 8345a, 8466a; 7 U.S.C. §§ 6, 6b, 6c, 6h, 6o, 13, 23; 15 U.S.C. §§ 50, 77e, 77q, 77x, 78j, 78ff, 80b-6, 1644, 6821; 18 U.S.C. §§ 38, 220, 225, 285–289, 471–473, 500, 510, 553(a)(1), 641, 656, 657, 659, 662, 664, 1001– 1008, 1010–1014, 1016–1022, 1025, 1026, 1028, 1029, 1030(a)(4)–(5), 1031, 1037, 1040, 1341–1344, 1348, 1350, 1361, 1363, 1369, 1702, 1703 (if vandalism or malicious mischief, including destruction of mail, is involved), 1708, 1831, 1832, 1992(a)(1), (a)(5), 2113(b), 2282A, 2282B, 2291, 2312–2317, 2332b(a)(1), 2701; 19 U.S.C. § 2401f; 20 U.S.C. § 1097(a), (b), (d), (e); 29 U.S.C. § 501(c); 42 U.S.C. § 1011; 49 U.S.C. §§ 14915, 30170, 46317(a), 60123(b)".

The Commentary to §2B4.1 captioned "Statutory Provisions" is amended by striking "18 U.S.C. §§ 215" and inserting "18 U.S.C. §§ 215, 220".

Section 2G1.1(b)(1)(B) is amended by striking "the offense involved fraud or coercion" and inserting "(i) the offense involved fraud or coercion; or (ii) the offense of conviction is 18 U.S.C. § 2421A(b)(2)".

The Commentary to §2G1.1 captioned "Statutory Provisions" is amended by striking "2422(a) (only if the offense involved a victim other than a minor)" and inserting "2421A (only if the offense involved a victim other than a minor), 2422(a) (only if the offense involved a victim other than a minor). For additional statutory provision(s), *see* Appendix A (Statutory Index)".

Section 2G1.3(b) is amended—

in paragraph (3) by striking "increase by 2 levels" and inserting "increase by 2 levels. *Provided*, however, that subsection (b)(3)(B) shall not apply if the offense of conviction is 18 U.S.C. § 2421A";

and in paragraph (4) by striking "If (A) the offense involved the commission of a sex act or sexual contact; or (B) subsection (a)(3) or (a)(4) applies and the offense involved a commercial sex act, increase by 2 levels.", and inserting the following:

"(Apply the greater):

(A)     If (i) the offense involved the commission of a sex act or sexual contact; or (ii) subsection (a)(3) or (a)(4) applies and the offense involved a commercial sex act, increase by 2 levels.

(B)     If (i) subsection (a)(4) applies; and (ii) the offense of conviction is 18 U.S.C. § 2421A(b)(2), increase by 4 levels.".

The Commentary to §2G1.3 captioned "Statutory Provisions" is amended by striking "2422 (only if the offense involved a minor), 2423, 2425" and inserting "2421A (only if the offense involved a minor), 2422 (only if the offense involved a minor), 2423, 2425. For additional statutory provision(s), *see* Appendix A (Statutory Index)".

The Commentary to §2H3.1 captioned "Statutory Provisions" is amended by striking "47 U.S.C. § 605" and inserting "44 U.S.C. § 3572; 47 U.S.C. § 605".

The Commentary to §2N1.1 captioned "Statutory Provisions" is amended by striking "18 U.S.C. § 1365(a), (e)" and inserting "18 U.S.C. § 1365(a), (e); 21 U.S.C. § 333(b)(7). For additional statutory provision(s), *see* Appendix A (Statutory Index)".

The Commentary to §2N2.1 captioned "Statutory Provisions" is amended by striking "333(a)(1), (a)(2), (b)" and inserting "333(a)(1), (a)(2), (b)(1)–(6), (b)(8)".

The Commentary to §2S1.3 captioned "Statutory Provisions" is amended by striking "5332" and inserting "5332, 5335, 5336".

The Commentary to §2X5.2 captioned "Statutory Provisions" is amended by striking "18 U.S.C. §§ 1365(f), 1801; 34 U.S.C. § 12593; 49 U.S.C. § 31310." and inserting "10 U.S.C. § 2733a(g)(2); 18 U.S.C. §§ 39B, 1365(f), 1801, 2259(d)(4); 34 U.S.C. § 12593; 49 U.S.C. § 31310. For additional statutory provision(s), *see* Appendix A (Statutory Index).".

Appendix A (Statutory Index) is amended—

by inserting before the line referenced to 7 U.S.C. § 6 the following new line references:

"5 U.S.C. § 8345a          2B1.1
5 U.S.C. § 8466a          2B1.1";

by inserting before the line referenced to 12 U.S.C. § 631 the following new line reference:

"10 U.S.C. § 2733a(g)(2)       2X5.2";

by inserting before the line referenced to 18 U.S.C. § 43 the following new line references:

"18 U.S.C. § 39B              2A5.2, 2X5.2
18 U.S.C. § 40A              2A2.4";

by inserting before the line referenced to 18 U.S.C. § 224 the following new line reference:

"18 U.S.C. § 220              2B1.1, 2B4.1";

by inserting before the line referenced to 18 U.S.C. § 2260(a) the following new line reference:

"18 U.S.C. § 2259(d)(4)       2X5.2";

by inserting before the line referenced to 18 U.S.C. § 2320 the following new line reference:

"18 U.S.C. § 2319C            2B5.3";

by inserting before the line referenced to 18 U.S.C. § 2422 the following new line reference:

"18 U.S.C. § 2421A            2G1.1, 2G1.3";

by inserting before the line referenced to 21 U.S.C. § 101 the following new line reference:

"20 U.S.C. § 1097(e)          2B1.1";

by inserting before the line referenced to 21 U.S.C. § 458 the following new line reference:

"21 U.S.C. § 333(b)(8)        2N2.1";

by inserting before the line referenced to 31 U.S.C. § 5363 the following new line references:

"31 U.S.C. § 5335            2S1.3
31 U.S.C. § 5336            2S1.3";

and by inserting before the line referenced to 45 U.S.C. § 359(a) the following new line reference:

"44 U.S.C. § 3572                2H3.1".

**Reason for Amendment:** This multi-part amendment responds to recently enacted legislation.

### FDA Reauthorization Act of 2017

First, the amendment amends Appendix A (Statutory Index) to reference a new offense for counterfeit drugs at 21 U.S.C. § 333(b)(8) (Penalties [for violations of the Federal Food, Drug, and Cosmetic Act (FDCA)]) to §2N2.1 (Violations of Statutes and Regulations Dealing With Any Food, Drug, Biological Product, Device, Cosmetic, Agricultural Product, or Consumer Product) in response to the FDA Reauthorization Act of 2017, Pub. L. 115–52 (Aug. 18, 2017). The Act added subsection 333(b)(8), which provides that the statutory maximum term of imprisonment is ten years for a violation of 21 U.S.C. § 331(i)(3) (Prohibited acts [under the FDCA]). Subsection 331(i)(3) prohibits causing a drug to be counterfeited, or making, selling, dispensing, or holding for sale or dispensing, a counterfeit drug. The Commission determined that §2N2.1 is the most appropriate guideline to which to reference this offense because §2N2.1 covers similar penalty provisions at section 333.

### Allow States and Victims to Fight Online Sex Trafficking Act

Second, the amendment amends §§2G1.1 (Promoting a Commercial Sex Act or Prohibiting Sexual Conduct with an Individual Other than a Minor) and 2G1.3 (Promoting a Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Transportation of Minors to Engage in a Commercial Sex Act or Prohibited Sexual Conduct; Travel to Engage in Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Sex Trafficking of Children; Use of Interstate Facilities to Transport Information about a Minor) in response to the Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. 115–164 (Apr. 11, 2017). The Act added a new offense at 18 U.S.C. § 2421A(a) (Promotion or facilitation of prostitution and reckless disregard of sex trafficking) which prohibits owning, managing, or operating an interactive computer service with the intent to promote or facilitate prostitution. Section 2421A has a statutory maximum term of imprisonment of ten years. The Act included an aggravated offense at subsection 2421A(b)(2) if the offender commits an offense under subsection 2421A(a) while acting in reckless disregard of the fact that such conduct contributed to sex trafficking in violation of 18 U.S.C. § 1591(a) (Sex trafficking of children or by force, fraud, or coercion). Offenses under section 1591(a) that involve force, fraud, coercion, or minors have statutory mandatory minimum terms of imprisonment of at least ten years and statutory maximum terms of imprisonment of life. Offenses under subsection 2421A(b)(2) have a 25-year statutory maximum term of imprisonment to reflect the serious nature of the sex trafficking conduct in violation of

section 1591(a). To reflect the statutory maximum term of imprisonment at subsection 2421A(b)(2), the amendment amends the 4-level enhancement at §2G1.1(b)(1)(B) and adds a new 4-level enhancement at §2G1.3(b)(4)(B) that apply if the offense of conviction is 18 U.S.C. § 2421A(b)(2). The amendment also amends §2G1.3(b)(3) to provide that §2G1.3(b)(3)(B) shall not apply if the offense of conviction is 18 U.S.C. § 2421A because the use of a computer is already accounted for in the base offense level.

### FAA Reauthorization Act of 2018

Third, the amendment amends Appendix A to reference new offenses in the FAA Reauthorization Act of 2018, Pub. L. 115–254 (Oct. 5, 2018). The new offense at 18 U.S.C. § 39B (Unsafe operation of unmanned aircraft) is referenced to §2A5.2 (Interference with Flight Crew Member or Flight Attendant; Interference with Dispatch, Navigation, Operation, or Maintenance of Mass Transportation Vehicle) and §2X5.2 (Class A Misdemeanors (Not Covered by Another Specific Offense Guideline)). Section 39B prohibits the knowing or reckless unsafe operation of drones that interfere with the safe operation of an aircraft carrying one or more persons or operated in close proximity to an airport runway. Section 39B has a statutory maximum term of imprisonment of one year. The statutory maximum term of imprisonment for reckless violations that cause serious bodily injury or death is ten years, and for knowing violations that cause serious bodily injury or death is any term of years or life. The Commission determined that §2A5.2 is the most appropriate guideline to which to reference felony violations of section 39B because it covers conduct interfering with the operation of aircraft. Additionally, providing a reference to §2X5.2 is consistent with Commission practice relating to new misdemeanor offenses.

The FAA Reauthorization Act also added a new offense at 18 U.S.C. § 40A (Operation of unauthorized unmanned aircraft over wildfires) which is referenced in Appendix A to §2A2.4 (Obstructing or Impeding Officers). Section 40A prohibits operating a drone in a manner that interferes with wildfire suppression or with law enforcement or emergency response efforts related to wildfire suppression. Section 40A has a statutory maximum term of imprisonment of two years. The Commission determined that §2A2.4 is the most appropriate guideline to which to reference this offense because it covers conduct involving interfering with and obstructing or impeding officers.

### SUPPORT for Patients and Communities Act

Fourth, the amendment amends Appendix A to reference a new offense at 18 U.S.C. § 220 (Illegal remunerations for referrals to recovery homes, clinical treatment facilities, and laboratories) to §§2B1.1 (Theft, Property Destruction, and Fraud) and 2B4.1 (Bribery in Procurement of Bank Loan and Other Commercial Bribery) in response to the Substance Use-Disorder Prevention that Promotes Opioid Recovery and Treatment for Patients and Communities Act ("the SUPPORT for Patients and Communities Act"), Pub. L. 115–271 (Oct. 24, 2018). Section 220 prohibits soliciting, receiving, paying, or offering any remuneration, including kickbacks, bribes, or rebates, for referring patients

to a facility covered by a health care benefit program. Section 220 has a statutory maximum term of imprisonment of ten years. The Commission determined that §§2B1.1 and 2B4.1 are the most appropriate guidelines to which to reference this offense because both guidelines cover conduct involving kickbacks and bribery.

*Amy, Vicky, and Andy Child Pornography Victim Assistance Act*

Fifth, the amendment amends Appendix A to reference a new offense at 18 U.S.C. § 2259(d) (Mandatory restitution [for child pornography victims]) to §2X5.2 in response to the Amy, Vicky, and Child Pornography Victim Assistance Act, Pub. L. 115–299 (Dec. 7, 2018). Subsection 2259(d) prohibits attorneys from charging fees in excess of 15 percent when representing a child pornography victim who receives "defined monetary assistance" from the Child Pornography Victims Reserve and provides for a statutory maximum term of imprisonment of one year. Providing a reference to §2X5.2 is consistent with Commission practice relating to new misdemeanor offenses.

*Foundations for Evidence-Based Policymaking Act*

Sixth, the amendment amends Appendix A to reference a new offense at 44 U.S.C. § 3572 (Confidential information protection) to §2H3.1 (Interception of Communications; Eavesdropping; Disclosure of Certain Private or Protected Information) in response to the Confidential Information Protection and Statistical Efficiency Act, part of the Foundations for Evidence-Based Policymaking Act of 2018, Pub. L. 115–435 (Jan. 14, 2019). Section 3572 prohibits the unauthorized disclosure of information collected by an agency under a pledge of confidentiality for exclusively statistical purposes or using the information for other than statistical purposes. Section 3572 has a statutory maximum term of imprisonment of five years. The Commission determined that §2H3.1 is the most appropriate guideline to which to reference this offense because it covers conduct involving the unauthorized disclosure of information.

*National Defense Authorization Act for Fiscal Year 2020*

Seventh, the amendment amends Appendix A to reference a new offense at 10 U.S.C. § 2733a (Armed Forces; Medical malpractice claims by members of the uniformed services) to §2X5.2 in response to the National Defense Authorization Act for Fiscal Year 2020, Pub. L. 116–92 (Dec. 20, 2019). Section 2733a prohibits attorneys from charging fees in excess of 20 percent when representing a member of the uniformed services who receives a payment under section 2733a for medical malpractice caused by a health care provider of the Department of Defense. Section 2733a has a statutory maximum term of imprisonment of one year. Providing a reference to §2X5.2 is consistent with Commission practice relating to new misdemeanor offenses.

*Representative Payee Fraud Prevention Act*

Eighth, the amendment amends Appendix A to reference two new offenses at 5 U.S.C. §§ 8345a (Government Organization and Employees; Embezzlement or conversion of

payments) and 8466a (Embezzlement or conversion of payments) to §2B1.1 in response to the Representative Payee Fraud Prevention Act of 2019, Pub. L. 116–126 (Mar. 18, 2020). Sections 8345a and 8466a prohibit representative payees of minors or other individuals under a legal disability from embezzling or converting retirement payments under the Civil Service Retirement System or the Federal Employees' Retirement System. The statutory maximum term of imprisonment for both sections is five years. The Commission determined that §2B1.1 is the most appropriate guideline to which to reference these offenses because it covers conduct involving similar financial fraud.

### *Stop Student Debt Relief Scams Act*

Ninth, the amendment amends Appendix A to reference a new offense at 20 U.S.C. § 1097(e) (Education; Student Assistance Programs; Criminal penalties) to §2B1.1 in response to the Stop Student Debt Relief Scams Act of 2019, Pub. L. 116–251 (Dec. 22, 2020). Subsection 1097(e) prohibits the unauthorized use of an access device relating to student assistance programs issued to another or obtained by fraud to access the information technology systems of the Department of Education for commercial advantage or private financial gain. Subsection 1097(e) has a statutory maximum term of imprisonment of five years. The Commission determined that §2B1.1 is the most appropriate guideline to which to reference this offense because §2B1.1 covers other section 1097 offenses prohibiting embezzlement, fraud and false statements involved in student assistance programs.

### *Protecting Lawful Streaming Act*

Tenth, the amendment amends Appendix A to reference a new offense at 18 U.S.C. § 2319C (Illicit digital transmission services) to §2B5.3 (Criminal Infringement of Copyright or Trademark) in response to the Protecting Lawful Streaming Act, part of the 2021 Consolidated Appropriations Act, Pub. L. 116–260 (Dec. 27, 2020). Section 2319C prohibits publicly offering or providing digital transmission services designed to provide the unauthorized transmission of copyrighted works, including pre-release works being prepared for commercial public performance, and provides for a statutory maximum term of imprisonment of three years. The statutory maximum term of imprisonment is five years if the offense involved one or more pre-release works, and for a second or subsequent violation of section 2319C, the statutory maximum term of imprisonment is ten years. The Commission determined that §2B5.3 is the most appropriate guideline to which to reference this offense because it covers conduct involving criminal copyright infringement including pre-release works.

### *William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021*

Eleventh, the amendment amends Appendix A to reference multiple new offenses at 31 U.S.C. §§ 5335 (Money and Finance; Concealment of source of assets in monetary transactions) and 5336 (Beneficial ownership information reporting requirements) to §2S1.3 (Structuring Transactions to Evade Reporting Requirement; Failure to Report

Cash or Monetary Transactions; Failure to File Currency and Monetary Instruments Report) in response to the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. 116–283 (Jan. 1, 2021).

Subsection 5335(b) prohibits concealing, falsifying, or misrepresenting a material fact from a financial institution about the ownership or control of certain assets over $1,000,000 if the person or entity controlling the assets is a certain foreign figure or associate. Subsection 5335(c) prohibits concealing, falsifying, or misrepresenting a material fact, to or from a financial institution, about the source of funds in monetary transactions involving "primary money laundering concerns" and that violate the prohibitions prescribed in section 5318A(b)(5). Both subsections 5335(b) and 5335(c) have a statutory maximum term of imprisonment of ten years.

Subsection 5336(h)(1) prohibits willfully providing false or fraudulent beneficial ownership information to the Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") in accordance with the reporting requirements in subsection 5336(b). Subsection 5336(h)(1) has a statutory maximum term of imprisonment of two years. Subsection 5336(c)(4) prohibits employees and officers of any requesting agency from violating the protocols established by the Secretary of the Treasury or the unauthorized disclosure or use of the beneficial ownership information submitted to FinCEN. Subsection 5336(h)(2) prohibits any person from knowingly disclosing or using beneficial ownership information obtained through a report submitted to, or through a disclosure made by, FinCEN, without authorization. Both subsections 5336(c)(4) and 5336(h)(2) have a statutory maximum term of imprisonment of five years. The statutory maximum term of imprisonment for a violation of subsection 5336(c)(4) or 5336(h)(2) is ten years if the offense was committed while violating another law of the United States or as part of a pattern of certain unlawful activities.

The Commission determined that §2S1.3 is the most appropriate guideline to which to reference these new offenses because it covers similar conduct involving structuring financial transactions and requiring the filing of a Currency Transaction Report regarding payment, receipt, or transfer of United States coins or currency.

**3.     Amendment:** Section 2A3.3 is amended—

in the heading by striking "Acts" and inserting "Acts; Criminal Sexual Abuse of an Individual in Federal Custody".

in subsection (a) by striking "14" and inserting "18";

and by inserting at the end the following new subsection (c):

"(c)    Cross Reference

(1)    If the offense involved criminal sexual abuse or attempt to commit criminal sexual abuse (as defined in 18 U.S.C. § 2241 or § 2242), apply §2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse). If the victim had not attained the age of 12 years, §2A3.1 shall apply, regardless of the 'consent' of the victim.".

The Commentary to §2A3.3 captioned "Statutory Provision" is amended by striking "§ 2243(b)" and inserting "§§ 2243(b), 2243(c)".

The Commentary to §2H1.1 captioned "Statutory Provisions" is amended by striking "246, 247, 248, 249" and inserting "246–250".

Appendix A (Statutory Index) is amended—

by inserting before the line referenced to 18 U.S.C. § 281 the following new line reference:

"18 U.S.C. § 250          2H1.1";

and by inserting before the line referenced to 18 U.S.C. § 2244 the following new line reference:

"18 U.S.C. § 2243(c)      2A3.3".

**Reason for Amendment:** This multi-part amendment responds to statutory changes provided in division W, title XII, of the Violence Against Women Act Reauthorization Act, Pub. L. 117–103 (Nov. 9, 2022) and separately addresses concerns regarding cases involving sexual abuse committed by law enforcement or correctional personnel against victims in their custody, care, or supervision.

First, the amendment amends Appendix A (Statutory Appendix) to reference the new offense created at 18 U.S.C. § 250 (Penalties for civil rights offenses involving sexual misconduct) to §2H1.1 (Offenses Involving Individual Rights). New section 250 criminalizes engaging in or causing another to engage in sexual misconduct while committing any civil rights offense under chapter 13 (Civil Rights) of title 18, U.S. Code, or 42 U.S.C. § 3631 (Fair Housing [violations]). Section 250 delineates different degrees of prohibited sexual misconduct, including aggravated sexual abuse as defined in 18 U.S.C. § 2241 (Aggravated sexual abuse), sexual abuse as defined in 18 U.S.C. § 2242 (Sexual abuse), a sexual act not amounting to aggravated sexual abuse or sexual abuse, and sexual contact, as defined in 18 U.S.C. § 2244 (Abusive sexual contact). The statutory maximum term of imprisonment for a violation of section 250 ranges from two years to any term of years or life, depending on the sexual conduct involved in the offense.

The Commission determined that §2H1.1 is the most appropriate guideline to which to reference this new offense. Other similar offenses are referenced to this guideline. In addition, the Commission concluded that the alternative base offense levels provided in §2H1.1 effectively address both the broad array of conduct criminalized under this new statute and the varying statutory maximum terms of imprisonment applicable to such conduct.

Second, the amendment amends Appendix A to reference new subsection (c) at 18 U.S.C. § 2243 (Sexual abuse of a minor, a ward, or an individual in Federal custody) to §2A3.3 and makes a conforming change to §2A3.3's title. The new subsection at 18 U.S.C. § 2243 prohibits law enforcement officers from knowingly engaging in a sexual act with an individual under arrest or supervision, in detention, or in federal custody. The Commission determined §2A3.3 is the most appropriate guideline to which to reference the new offense because it covers a similar offense at 18 U.S.C. § 2243(b) prohibiting anyone in a federal prison, institution, or facility from knowingly engaging in a sexual act with a ward, defined as an inmate or other person in official detention and under the custodial, supervisory, or disciplinary authority of the person engaging in the act. Subsection 2243(b) also has the same 15-year statutory maximum term of imprisonment, and a reference to this guideline will result in similar penalties for both subsections of section 2243.

Finally, the amendment increases the base offense level at §2A3.3 for offenses involving the sexual abuse of a ward or an individual in federal custody from 14 to 18. The Commission determined that the increased base offense level will more appropriately reflect the 15-year statutory maximum penalty for offenses referenced to this guideline and punish the serious sexual conduct involved in these offenses. In promulgating the amendment, the Commission was informed by both the rate and extent of above-range sentences in these cases. While the average guideline minimum in fiscal years 2018 through 2022 was 17 months (median 12 months), the average sentence imposed was more than double, at 35 months (median 15 months).

The Commission also concluded that an increased guideline range for §2A3.3 offenses would be more proportional to the guideline range at §2A3.2 (Criminal Sexual Abuse of a Minor Under the Age of Sixteen Years (Statutory Rape) or Attempt to Commit Such Acts) for the sexual abuse of minors over the age of 12 and under the age of 16 years, conduct prohibited by 18 U.S.C. § 2243(a) with the same 15-year statutory maximum term of imprisonment as subsections 2243(b) and 2243(c). Section 2A3.2 has a base offense level 18 and a 4-level enhancement if the victim is in the care, custody, or supervisory control of the defendant.

Consistent with this approach, the amendment also amends §2A3.3 to include the same cross reference currently provided for in §2A3.2 in order to ensure proportional guideline ranges for all section 2243 offenses when the offense involved aggravating sexual conduct. The new cross reference sends cases to §2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse) if the offense involved criminal sexual abuse or attempt to commit criminal sexual abuse (as defined in 18 U.S.C. § 2241 or § 2242),

and further directs that §2A3.1 shall apply if the victim had not attained the age of 12 years, regardless of the "consent" of the victim.

4.     **Amendment:** Section 2D1.1(a) is amended—

in paragraph (1) by striking the following:

"43, if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C), or 21 U.S.C. § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance and that the defendant committed the offense after one or more prior convictions for a similar offense; or",

and inserting the following:

"43, if—

(A)     the defendant is convicted under 21 U.S.C. § 841(b)(1)(A) or (b)(1)(B), or 21 U.S.C. § 960(b)(1) or (b)(2), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance and that the defendant committed the offense after one or more prior convictions for a serious drug felony or serious violent felony; or

(B)     the defendant is convicted under 21 U.S.C. § 841(b)(1)(C) or 21 U.S.C. § 960(b)(3) and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance and that the defendant committed the offense after one or more prior convictions for a felony drug offense; or";

and in paragraph (3) by striking "similar offense" and inserting "felony drug offense".

Section 2D1.1(b)(18) is amended by striking "subdivisions" and inserting "paragraphs".

The Commentary to §2D1.1 captioned "Application Notes" is amended—

by striking Note 2 as follows:

"2.     *'Plant'.*—For purposes of the guidelines, a 'plant' is an organism having leaves and a readily observable root formation (*e.g.*, a marihuana cutting having roots, a rootball, or root hairs is a marihuana plant).";

by redesignating Note 1 as Note 2;

by inserting before Note 2 (as so redesignated) the following new Note 1:

"1.      *Definitions.*—

For purposes of the guidelines, a 'plant' is an organism having leaves and a readily observable root formation (*e.g.*, a marihuana cutting having roots, a rootball, or root hairs is a marihuana plant).

For purposes of subsection (a), 'serious drug felony,' 'serious violent felony,' and 'felony drug offense' have the meaning given those terms in 21 U.S.C. § 802.";

and in Note 21 by striking "a minimum offense level of level 17" and inserting "that the applicable guideline range shall not be less than 24 to 30 months of imprisonment".

Section 2D1.11(b)(6) is amended by striking "subdivisions" and inserting "paragraphs".

The Commentary to §2D1.11 captioned "Application Notes" is amended in Note 7 by striking "a minimum offense level of level 17" and inserting "an applicable guideline range of not less than 24 to 30 months of imprisonment".

Section 4A1.3(b)(3)(B) is amended—

in the heading by striking "*to Category I*";

by striking "whose criminal history category is Category I after receipt of" and inserting "who receives";

by striking "criterion" and inserting "criminal history requirement";

and by striking "if, before receipt of the downward departure, the defendant had more than one criminal history point under §4A1.1 (Criminal History Category)" and inserting "if the defendant did not otherwise meet such requirement before receipt of the downward departure".

Section 5C1.2(a) is amended—

by inserting after "§ 963," the following: "or 46 U.S.C. § 70503 or § 70506,";

by striking "set forth below" and inserting "as follows";

and by striking paragraph (1) as follows:

"(1)      the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of §4A1.3 (Departures Based on Inadequacy of Criminal History Category);",

and inserting the following new paragraph (1):

"(1)    the defendant does not have—

    (A)    more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

    (B)    a prior 3-point offense, as determined under the sentencing guidelines; and

    (C)    a prior 2-point violent offense, as determined under the sentencing guidelines;".

Section 5C1.2(b) is amended by striking "the offense level applicable from Chapters Two (Offense Conduct) and Three (Adjustments) shall not be less than 17" and inserting "the applicable guideline range shall not be less than 24 to 30 months of imprisonment".

The Commentary to §5C1.2 captioned "Application Notes" is amended—

by striking Notes 1, 2, and 3 as follows:

"1.    'More than 1 criminal history point, as determined under the sentencing guidelines,' as used in subsection (a)(1), means more than one criminal history point as determined under §4A1.1 (Criminal History Category) before application of subsection (b) of §4A1.3 (Departures Based on Inadequacy of Criminal History Category).

2.    'Dangerous weapon' and 'firearm,' as used in subsection (a)(2), and 'serious bodily injury,' as used in subsection (a)(3), are defined in the Commentary to §1B1.1 (Application Instructions).

3.    'Offense,' as used in subsection (a)(2)–(4), and 'offense or offenses that were part of the same course of conduct or of a common scheme or plan,' as used in subsection (a)(5), mean the offense of conviction and all relevant conduct.";

by inserting the following new Note 1:

"1.    *Definitions*.—

    (A)    The term 'violent offense' means a 'crime of violence,' as defined in 18 U.S.C. § 16, that is punishable by imprisonment.

    (B)    'Dangerous weapon' and 'firearm,' as used in subsection (a)(2), and 'serious bodily injury,' as used in subsection (a)(3), are defined in the Commentary to §1B1.1 (Application Instructions).

(C) 'Offense,' as used in subsection (a)(2)–(4), and 'offense or offenses that were part of the same course of conduct or of a common scheme or plan,' as used in subsection (a)(5), mean the offense of conviction and all relevant conduct.";

by redesignating Note 4 as Note 2;

in Note 2 (as so redesignated) by inserting at the beginning the following new heading: "*Application of subsection (a)(2).*—";

by striking Notes 5, 6, and 7 as follows:

"5.     'Organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines,' as used in subsection (a)(4), means a defendant who receives an adjustment for an aggravating role under §3B1.1 (Aggravating Role).

6.      'Engaged in a continuing criminal enterprise,' as used in subsection (a)(4), is defined in 21 U.S.C. § 848(c). As a practical matter, it should not be necessary to apply this prong of subsection (a)(4) because (i) this section does not apply to a conviction under 21 U.S.C. § 848, and (ii) any defendant who 'engaged in a continuing criminal enterprise' but is convicted of an offense to which this section applies will be an 'organizer, leader, manager, or supervisor of others in the offense.'

7.      Information disclosed by the defendant with respect to subsection (a)(5) may be considered in determining the applicable guideline range, except where the use of such information is restricted under the provisions of §1B1.8 (Use of Certain Information). That is, subsection (a)(5) does not provide an independent basis for restricting the use of information disclosed by the defendant.";

by inserting the following new Notes 3 and 4:

"3.     *Application of Subsection (a)(4).*—

(A) *'Organizer, leader, manager, or supervisor of others in the offense'.*—The first prong of subsection (a)(4) requires that the defendant was not subject to an adjustment for an aggravating role under §3B1.1 (Aggravating Role).

(B) *'Engaged in a continuing criminal enterprise'.*—'Engaged in a continuing criminal enterprise,' as used in subsection (a)(4), is defined in 21 U.S.C. § 848(c). As a practical matter, it should not be necessary to apply this prong of subsection (a)(4) because (i) this section does not apply to a conviction under 21 U.S.C. § 848, and (ii) any defendant who 'engaged in a continuing criminal enterprise' but is convicted of an offense to which

this section applies will be an 'organizer, leader, manager, or supervisor of others in the offense.'

4.    *Use of Information Disclosed under Subsection (a)*.—Information disclosed by a defendant under subsection (a) may not be used to enhance the sentence of the defendant unless the information relates to a violent offense, as defined in Application Note 1(A).";

by redesignating Notes 8 and 9 as Notes 5 and 6, respectively;

in Note 5 (as so redesignated) by inserting at the beginning the following new heading: "*Government's Opportunity to Make Recommendation*.—";

and in Note 6 (as so redesignated) by inserting at the beginning the following new heading: "*Exemption from Otherwise Applicable Statutory Minimum Sentences*.—".

The Commentary to §5C1.2 captioned "Background" is amended by inserting after "Violent Crime Control and Law Enforcement Act of 1994" the following: "and subsequently amended".

**Reason for Amendment:** This two-part amendment revises §5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases) and subsections (a)(1) and (a)(3) of §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy) in response to the First Step Act of 2018, Pub. L. 115–391 (Dec. 21, 2018) ("First Step Act"). The First Step Act amended the eligibility criteria of the "safety valve" provision at 18 U.S.C. § 3553(f) and the enhanced penalty provisions for certain drug trafficking defendants at 21 U.S.C. §§ 841(b) and 960(b). The amendment primarily revises §5C1.2 to conform it to the statutory safety valve, as amended by the First Step Act. In addition, the amendment revises subsections (a)(1) and (a)(3) of §2D1.1 to make the guideline's reference to the type of prior offenses that trigger enhanced mandatory minimum penalties consistent with the amended statutory provisions.

First, the amendment makes three changes to §5C1.2 and its corresponding commentary to reflect the statutory changes to section 3553(f) made by the First Step Act. The First Step Act expanded the safety valve provision at section 3553(f) by extending its applicability to defendants convicted of maritime offenses (46 U.S.C. §§ 70503 and 70506) and broadening the criminal history eligibility criteria to include defendants who do not have: (1) "more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines"; (2) a "prior 3-point offense, as determined under the sentencing guidelines"; and (3) a "prior 2-point violent offense, as determined under the sentencing guidelines." The amendment revises §5C1.2(a) to include maritime offenses and the expanded statutory criminal history criteria. Next, it revises Application Note 1 to incorporate the statutory definition for the term "violent offense." Finally, it revises Application Note 7 to reflect the new statutory limitation that information disclosed by a defendant pursuant to

18 U.S.C. § 3553(f) "may not be used to enhance the defendant's sentence unless the information relates to a violent offense."

Second, the amendment revises §5C1.2(b) to account for the expanded class of defendants who qualify for safety valve relief. Section 5C1.2(b) implemented Congress's directive requiring that the guideline minimum be at least 24 months for defendants whose statutorily required minimum sentence was at least five years by providing a minimum offense level of 17 for such offenders. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103–222, § 80001(b), 108 Stat. 1796, 1985 (1994) ("In the case of a defendant for whom the statutorily required minimum sentence is 5 years, such guidelines and amendments to guidelines . . . shall call for a guideline range in which the lowest term of imprisonment is at least 24 months."); *see also* USSG App. C, amend. 624 (effective Nov. 1, 2001) (adding §5C1.2(b) "in order to comply more strictly with the directive"). Before the First Step Act, only defendants in Criminal History Category (CHC) I (with no more than one criminal history point) could qualify for safety valve relief, and a base offense level of 17 therefore correlated with a guideline range of 24 to 30 months for all safety-valve-eligible defendants. After the First Step Act, a safety-valve-eligible defendant can be in any CHC, and an offense level of 17 correlates with the following guideline ranges at each category: I (24–30 months); II (27–33); III (30–37); IV (37–46); V (46–57); and VI (51–63). Because Congress's directive is tied to the existence of a 5-year mandatory minimum penalty and not to the defendant's CHC, the amendment replaces the offense-level floor with a guideline-range floor. The Commission determined that the proportionality concerns raised in public comment and testimony are addressed by the operation of the Sentencing Table, irrespective of the offense-level floor.

Third, the amendment makes conforming changes to §4A1.3 (Departures Based on Inadequacy of Criminal History Category (Policy Statement)), which references the number of criminal history points permitted under §5C1.2(a)(1).

Fourth, the amendment makes only non-substantive changes to §2D1.1(b)(18) and §2D1.11(b)(6), the 2-level reductions that are tethered to the eligibility criteria of paragraphs (1)–(5) of §5C1.2(a). The 2-level reductions in §2D1.1 and §2D1.11 apply to any defendant who meets the revised criteria of §5C1.2.

Finally, the amendment revises subsections (a)(1) and (a)(3) of §2D1.1 to replace the term "similar offense" with the appropriate terms set forth in the relevant statutory provisions, as amended by the First Step Act.

The penalty provisions at 21 U.S.C. §§ 841(b) and 960(b) provide enhanced mandatory minimum penalties for defendants (1) whose instant offense resulted in death or serious bodily injury or (2) who have prior convictions for certain specified offenses. Penalties are further increased if death or serious bodily injury occurred as a result of the instant offense *and* the defendant has a qualifying prior conviction. Prior to the First Step Act, all of the recidivist penalty provisions within sections 841(b) and 960(b) provided for an enhanced mandatory minimum penalty if a defendant had one or more convictions for a

prior "felony drug offense," as defined in 21 U.S.C. § 802(44). The First Step Act both narrowed and expanded the type of prior offenses that trigger enhanced mandatory minimum penalties under 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(B), 960(b)(1), and 960(b)(2) by replacing the term "felony drug offense" with "serious drug felony," as defined in 21 U.S.C. § 802(57), and adding "serious violent felony" offenses, as defined in 21 U.S.C. § 802(58). The First Step Act did not amend 21 U.S.C. §§ 841(b)(1)(C), 841(b)(1)(E), 960(b)(3), or 960(b)(5), which still provide for enhanced mandatory minimum penalties if a defendant was convicted of a prior "felony drug offense."

The enhanced statutory penalty structure is accounted for through heightened alternative base offense levels (BOL) at §2D1.1(a)(1)–(a)(4). Prior to the amendment, §2D1.1(a)(1) provided for a BOL of 43 "if the defendant is convicted under [any of six enumerated subsections], and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance and that the defendant committed the offense after one or more prior convictions *for a similar offense*." Subsection 2D1.1(a)(3) is identical to §2D1.1(a)(1), except that it provides a BOL of 30 and applies if the defendant is convicted of an offense involving a Schedule III controlled substance under 21 U.S.C. § 841(b)(1)(E) or 21 U.S.C. § 960(b)(5).

The First Step Act amended four of the six penalty provisions referenced in §2D1.1(a)(1) and, for those amended provisions, the term "similar offense" is over-inclusive, because it includes drug offenses that do not meet the definition of "serious drug felony," and under-inclusive, because it fails to account for a prior "serious violent felony." The amendment divides §2D1.1(a)(1) into two subparagraphs, (A) and (B). Subparagraph (A), which references the four statutory provisions amended by the First Step Act, replaces the term "similar offense" with "serious drug felony or serious violent felony." Subparagraph (B), which references the two provisions that were not amended, replaces the term "similar offense" with "felony drug offense." The amendment also amends §2D1.1(a)(3), by replacing the term "similar offense" with "felony drug offense," for consistency with the terminology used in §2D1.1(a)(1).

5.    **Amendment:** Section 2D1.1(b)(13) is amended—

by inserting after "defendant" the following: "(A)";

and by inserting after "4 levels" the following: "; or (B) represented or marketed as a legitimately manufactured drug another mixture or substance containing fentanyl (N-phenyl-N-[1-(2-phenylethyl )-4-piperidinyl] propanamide) or a fentanyl analogue, and acted with willful blindness or conscious avoidance of knowledge that such mixture or substance was not the legitimately manufactured drug, increase by 2 levels. The term 'drug,' as used in subsection (b)(13)(B), has the meaning given that term in 21 U.S.C. § 321(g)(1)".

**Reason for Amendment:** This amendment revises subsection (b)(13) of §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession

with Intent to Commit These Offenses); Attempt or Conspiracy) to add a new subparagraph (B) with an alternative 2-level enhancement for offenses where the defendant represented or marketed as a legitimately manufactured drug another mixture or substance containing fentanyl or a fentanyl analogue, and acted with willful blindness or conscious avoidance of knowledge that such mixture or substance was not the legitimately manufactured drug. The new subparagraph (B) refers to 21 U.S.C. § 321(g)(1) to define the term "drug."

Since §2D1.1(b)(13)'s initial promulgation in 2018, the distribution of fentanyl and fentanyl analogues has dramatically increased. The Drug Enforcement Administration reported a substantial increase in the seizure of fake prescription pills, seizing over 50.6 million in calendar year 2022, with 70 percent containing fentanyl. Of those seized pills containing fentanyl, six out of ten contained a potentially lethal dose of the substance, according to lab testing. Additionally, the Centers for Disease Control and Prevention (CDC) estimates there were 107,622 drug overdose deaths in the United States in 2021, an increase of nearly 15 percent from the 93,655 deaths estimated in 2020. The CDC attributes 80,816 of the drug overdose deaths in 2021 to synthetic opioids, primarily fentanyl.

Commission data also indicates an increase in fentanyl and fentanyl analogue offenses, with fentanyl supplanting other drug types, such as crack cocaine and heroin, to become the third most prevalent primary drug (12.6%) among federal drug offenses in fiscal year 2022. In fiscal year 2017, 166 offenders were held accountable for fentanyl or fentanyl analogues. By fiscal year 2022, the number of offenders increased to 2,511 offenders.

The new alternative 2-level enhancement reflects the increased culpability of an individual who acted with willful blindness or conscious avoidance of knowledge that the substance the individual represented or marketed as a legitimately manufactured drug contained fentanyl or a fentanyl analogue. The Commission determined that the "willful blindness" and "conscious avoidance" doctrines are "well established in criminal law," as recognized by the Supreme Court. *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). While appellate courts articulate the "willful blindness" or "conscious avoidance" doctrines slightly differently, the requirement makes clear that the government bears the burden to prove by a preponderance of the evidence that the enhancement applies based on the subjective belief and deliberate action of the defendant committing the offense.

6.   **Amendment:** Section 2K2.1(a)(4)(B) is amended by inserting after "18 U.S.C. § 922(d)" the following: ", § 932, or § 933".

Section 2K2.1(a)(6)(B) is amended by inserting after "18 U.S.C. § 922(d)" the following: ", § 932, or § 933".

Section 2K2.1(b) is amended—

in paragraph (4) by striking "If any firearm (A) was stolen, increase by 2 levels; or (B) had an altered or obliterated serial number, increase by 4 levels" and inserting "If (A) any firearm was stolen, increase by 2 levels; or (B)(i) any firearm had an altered or obliterated serial number; or (ii) the defendant knew that any firearm involved in the offense was not otherwise marked with a serial number (other than a firearm manufactured prior to the effective date of the Gun Control Act of 1968) or was willfully blind to or consciously avoided knowledge of such fact, increase by 4 levels";

in paragraph (5) by striking "If the defendant engaged in the trafficking of firearms, increase by 4 levels." and inserting the following:

"(Apply the Greatest) If the defendant—

(A)      was convicted under 18 U.S.C. § 933(a)(2) or (a)(3), increase by 2 levels;

(B)      (i) transported, transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell, or otherwise dispose of, a firearm or any ammunition knowing or having reason to believe that such conduct would result in the receipt of the firearm or ammunition by an individual who (I) was a prohibited person; or (II) intended to use or dispose of the firearm or ammunition unlawfully; (ii) attempted or conspired to commit the conduct described in clause (i); or (iii) received a firearm or any ammunition as a result of inducing the conduct described in clause (i), increase by 2 levels; or

(C)      (i) transported, transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell, or otherwise dispose of, two or more firearms knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who (I) had a prior conviction for a crime of violence, controlled substance offense, or misdemeanor crime of domestic violence; (II) was under a criminal justice sentence at the time of the offense; or (III) intended to use or dispose of the firearms unlawfully; (ii) attempted or conspired to commit the conduct described in clause (i); or (iii) received two or more firearms as a result of inducing the conduct described in clause (i), increase by 5 levels.

*Provided*, however, that subsection (b)(5)(C)(i)(I) shall not apply based upon the receipt or intended receipt of the firearms by an individual with a prior conviction for a misdemeanor crime of domestic violence against a person in a dating relationship if, at the time of the instant offense, such individual met the criteria set forth in the proviso of 18 U.S.C. § 921(a)(33)(C).";

and by inserting at the end the following new paragraphs (8) and (9):

"(8)      If the defendant—

(A)      receives an enhancement under subsection (b)(5); and

        (B)     committed the offense in connection with the defendant's participation in a group, club, organization, or association of five or more persons, knowing or acting with willful blindness or conscious avoidance of knowledge that the group, club, organization, or association had as one of its primary purposes the commission of criminal offenses;

increase by 2 levels.

(9)     If the defendant—

        (A)     receives an enhancement under subsection (b)(5);

        (B)     does not have more than 1 criminal history point, as determined under §4A1.1 (Criminal History Category) and §4A1.2 (Definitions and Instructions for Computing Criminal History), read together, before application of subsection (b) of §4A1.3 (Departures Based on Inadequacy of Criminal History Category); and

        (C)     (i) was motivated by an intimate or familial relationship or by threats or fear to commit the offense and was otherwise unlikely to commit such an offense; or (ii) was unusually vulnerable to being persuaded or induced to commit the offense due to a physical or mental condition;

decrease by 2 levels.".

The Commentary to §2K2.1 captioned "Statutory Provisions" is amended by inserting after "(k)–(o)," the following: "932, 933,".

The Commentary to §2K2.1 captioned "Application Notes" is amended—

in Note 3 by striking "subsections (a)(4)(B) and (a)(6)" and inserting "subsections (a)(4)(B), (a)(6), and (b)(5)";

in Note 8(A)—

in the first paragraph by striking "However, if the offense involved a firearm with an altered or obliterated serial number, apply subsection (b)(4)(B)" and inserting "However, if the offense involved a firearm with an altered or obliterated serial number, or if the defendant knew that any firearm involved in the offense was not otherwise marked with a serial number (other than a firearm manufactured prior to the effective date of the Gun Control Act of 1968) or was willfully blind to or consciously avoided knowledge of such fact, apply subsection (b)(4)(B)(i) or (ii)";

and by striking the second paragraph as follows:

"Similarly, if the offense to which §2K2.1 applies is 18 U.S.C. § 922(k) or 26 U.S.C. § 5861(g) or (h) (offenses involving an altered or obliterated serial number) and the base offense level is determined under subsection (a)(7), do not apply the enhancement in subsection (b)(4)(B). This is because the base offense level takes into account that the firearm had an altered or obliterated serial number. However, it the offense involved a stolen firearm or stolen ammunition, apply subsection (b)(4)(A).",

and inserting the following paragraph:

"Similarly, if the offense to which §2K2.1 applies is 18 U.S.C. § 922(k) or 26 U.S.C. § 5861(g) or (h) (offenses involving an altered or obliterated serial number) and the base offense level is determined under subsection (a)(7), do not apply the enhancement in subsection (b)(4)(B)(i). This is because the base offense level takes into account that the firearm had an altered or obliterated serial number. However, if the offense involved a stolen firearm or stolen ammunition, or if the defendant knew that any firearm involved in the offense was not otherwise marked with a serial number (other than a firearm manufactured prior to the effective date of the Gun Control Act of 1968) or was willfully blind to or consciously avoided knowledge of such fact, apply subsection (b)(4)(A) or (B)(ii).";

in Note 8(B) by striking the following:

"*Knowledge or Reason to Believe*.—Subsection (b)(4) applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen or had an altered or obliterated serial number.",

and inserting the following:

"*Defendant's State of Mind*.—Subsection (b)(4)(A) or (B)(i) applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen or had an altered or obliterated serial number. However, subsection (b)(4)(B)(ii) only applies if the defendant knew that any firearm involved in the offense was not otherwise marked with a serial number (other than a firearm manufactured prior to the effective date of the Gun Control Act of 1968) or was willfully blind to or consciously avoided knowledge of such fact.";

in Note 10 by striking "subsection (a)(1) and (a)(2)" and inserting "subsections (a)(1) and (a)(2)";

in Note 13—

by striking paragraph (A) as follows:

"(A)    *In General*.—Subsection (b)(5) applies, regardless of whether anything of value was exchanged, if the defendant—

    (i)    transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and

    (ii)    knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—

        (I)    whose possession or receipt of the firearm would be unlawful; or

        (II)    who intended to use or dispose of the firearm unlawfully.";

by redesignating paragraphs (B), (C), and (D) as paragraphs (A), (B), and (C), respectively;

in paragraph (A) (as so redesignated) by striking the following paragraphs:

" 'Individual whose possession or receipt of the firearm would be unlawful' means an individual who (i) has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) at the time of the offense was under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. 'Crime of violence' and 'controlled substance offense' have the meaning given those terms in §4B1.2 (Definitions of Terms Used in Section 4B1.1). 'Misdemeanor crime of domestic violence' has the meaning given that term in 18 U.S.C. § 921(a)(33)(A).

The term 'defendant', consistent with §1B1.3 (Relevant Conduct), limits the accountability of the defendant to the defendant's own conduct and conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused.",

and inserting the following paragraphs:

" 'Crime of violence' and 'controlled substance offense' have the meaning given those terms in §4B1.2 (Definitions of Terms Used in Section 4B1.1).

'Misdemeanor crime of domestic violence' has the meaning given that term in 18 U.S.C. § 921(a)(33)(A).

The term 'criminal justice sentence' includes probation, parole, supervised release, imprisonment, work release, or escape status.

The term 'defendant,' consistent with §1B1.3 (Relevant Conduct), limits the accountability of the defendant to the defendant's own conduct and conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused.";

and in paragraph (B) (as so redesignated) by striking "If the defendant trafficked substantially more than 25 firearms" and inserting "If the defendant transported, transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell, or otherwise dispose of, substantially more than 25 firearms";

and by striking Note 15 as follows:

"15.    *Certain Convictions Under 18 U.S.C. §§ 922(a)(6), 922(d), and 924(a)(1)(A).*—In a case in which the defendant is convicted under 18 U.S.C. §§ 922(a)(6), 922(d), or 924(a)(1)(A), a downward departure may be warranted if (A) none of the enhancements in subsection (b) apply, (B) the defendant was motivated by an intimate or familial relationship or by threats or fear to commit the offense and was otherwise unlikely to commit such an offense, and (C) the defendant received no monetary compensation from the offense.".

Appendix A (Statutory Index) is amended by inserting before the line referenced to 18 U.S.C. § 956 the following new line references:

| | |
|---|---|
| "18 U.S.C. § 932 | 2K2.1 |
| 18 U.S.C. § 933 | 2K2.1". |

**Reason for Amendment:** This multi-part amendment responds to the directive in section 12004(a)(5) of the Bipartisan Safer Communities Act, Pub. L. No. 117-159 (the "Act"), addresses new offenses and other changes in law made by the Act, and revises the primary firearms guideline, §2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition), to account for firearms that are not marked with a serial number. In the Act, Congress directed that the Commission:

> shall review and amend its guidelines and policy statements to ensure that persons convicted of an offense under section 932 or 933 of title 18, United States Code, and other offenses applicable to the straw purchases and trafficking of firearms are subject to increased penalties in comparison to those currently provided by the guidelines and policy statements for such straw purchasing and trafficking of firearms offenses. In its review, the Commission shall consider, in particular, an appropriate amendment to reflect the intent of Congress that straw purchasers without significant criminal histories receive sentences that are sufficient to deter participation in such activities and reflect the defendant's role and culpability, and any coercion, domestic violence survivor history, or other mitigating factors. The Commission shall also review and amend its guidelines and policy statements to reflect the intent of Congress that a person convicted of an offense under section 932 or 933 of title 18, United States Code, who is affiliated with a gang, cartel, organized crime ring, or other such enterprise

should be subject to higher penalties than an otherwise unaffiliated individual.

Pub. L. 117-159, §12004(a)(5), 136 Stat. 1313, 1328 (2022).

*New Straw Purchase and Firearms Trafficking Offenses*

The amendment makes two changes to account for the new offenses at 18 U.S.C. §§ 932 and 933 established by the Act. First, the amendment amends Appendix A (Statutory Index) to reference the new offenses to §2K2.1. Section 12004(a)(1) of the Act makes it unlawful to engage in straw purchasing of firearms (18 U.S.C. § 932) or trafficking in firearms (18 U.S.C. § 933). Sections 932 and 933 both carry statutory maximum sentences of 15 years of imprisonment. 18 U.S.C. §§ 932(c)(1), 933(b). The statutory maximum in section 932 increases to 25 years where the defendant has reasonable cause to believe the firearm will be used to commit a felony or certain other offenses. 18 U.S.C. § 932(c)(2). As both offenses address conduct that is analogous to other firearms offenses, the Commission determined that the most appropriate guideline is §2K2.1.

Second, the amendment revises §2K2.1 to set the base offense level for defendants convicted of these crimes at level 14, or level 20 if the offense involved either a semiautomatic firearm that is capable of accepting a large capacity magazine or a firearm described in 26 U.S.C. § 5845(a). The Commission set these base offense levels to the same levels applicable to defendants convicted under a third statute used to prosecute straw purchasers and traffickers with the same 15-year statutory maximum, 18 U.S.C. § 922(d), to ensure proportionality.

*Increase Penalties for Straw Purchasing and Trafficking Offenses*

The amendment next revises §2K2.1 to respond to section 12004(a)(5) of the Act, which directs the Commission to provide increased penalties for defendants convicted under 18 U.S.C. § 932, 18 U.S.C. § 933, or "other offenses applicable to the straw purchases and trafficking of firearms." Specifically, the amendment revises the existing "trafficking" specific offense characteristic at §2K2.1(b)(5).

Prior to the amendment, subsection (b)(5) provided an enhancement of four levels "[i]f the defendant engaged in the trafficking of firearms." Application Note 13(A) provided that this enhancement applied if the defendant transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual, whose possession or receipt would be unlawful or who intended to use or dispose of the firearm unlawfully. Application Note 13(B) defined a person whose possession or receipt would be unlawful as an individual who (i) had a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) at the time of the offense was under a criminal justice sentence,

including probation, parole, supervised release, imprisonment, work release, or escape status.

The amendment revises subsection (b)(5) in three ways to comply with Congress's directive to include an increase for all defendants convicted under 18 U.S.C. § 932, 18 U.S.C. § 933, or other offenses involving straw purchasing or trafficking of firearms.

First, the amendment creates a new subsection, §2K2.1(b)(5)(A), which provides a 2-level enhancement for defendants convicted of illegally receiving a firearm under 18 U.S.C. § 933(a)(2) (the trafficking receipt provision) or § 933(a)(3) (attempting/conspiring to violate section 933). This ensures that receipt-only defendants convicted under section 933 receive the requisite increase.

Second, the amendment creates a new subsection, §2K2.1(b)(5)(B), which provides a 2-level enhancement for any defendant engaged in straw purchasing or trafficking. This provision incorporates the elements of the straw purchasing and firearms trafficking statutes, including 18 U.S.C. § 922(d), § 932, and § 933(a)(1), to provide an increase for defendants who attempted, conspired, or engaged in conduct involving the illicit transfer of a firearm or ammunition but who would not have received the trafficking enhancement prior to the amendment because of the limiting criteria in the existing Application Note 13. Those criteria included trafficking two or more firearms and that the recipient have criminal convictions for specified crimes.

Third, the amendment revises the criteria previously set forth in Application Notes 13(A) and (B) and incorporates the criteria into subsection (b)(5)(C). New subsection (b)(5)(C) provides an increase for defendants who attempted, conspired, or engaged in conduct involving the illicit transfer of two or more firearms to a person who (i) had a prior conviction of a crime of violence, controlled substance offense, or misdemeanor crime of domestic violence; (ii) was under a criminal justice sentence at the time of the offense; or (iii) intended to use or dispose of the firearms unlawfully. The new subsection (b)(5)(C) increases the enhancement from four levels to five levels to ensure straw purchasers and firearms traffickers meeting these criteria receive increased penalties as required by the directive.

The Commission determined that the expanded specific offense characteristic at subsection (b)(5) fully implements the directive by ensuring that defendants who illegally transfer a firearm receive an increased penalty under the guidelines. Specifically, the enhancement is tailored to apply to the most culpable defendants who engage in (a) straw purchasing, including those defendants who induce straw purchasing, and (b) firearms trafficking, including those defendants whose conduct was "upstream" in the gun trafficking pipeline. Consistent with the legislative history of the Act, public comment, and witness testimony, the Commission determined that such an increase is appropriate to reflect Congress's view that such conduct contributes to the illegal flow of firearms and that such defendants are currently under-punished as compared to felons in possession of the trafficked weapons. At the same time, by incorporating the elements of the core straw purchasing and firearms trafficking statutes, including the new offenses (sections 932

and 933), the new enhancement narrowly targets such defendants without also impacting other firearms defendants who were not intended to receive an increase.

The amendment also makes two conforming changes. First, to conform with statutory changes in 18 U.S.C. § 921(a)(33), the amended subsection (b)(5)(C) includes a proviso that the enhancement does not apply by reason of the transferee's prior misdemeanor crime of domestic violence where the transferee's rights were restored. Second, the amendment amends the upward departure provision in Application Note 13(B) to conform the language with the revised subsection (b)(5).

### Increase Penalties for Organized Crime

The amendment next amends §2K2.1 to respond to section 12004(a)(5) of the Act, which directs the Commission to increase penalties for defendants convicted under 18 U.S.C. § 932 or § 933 who are affiliated with organized crime. The amendment implements this portion of the directive by creating a new specific offense characteristic providing for a 2-level enhancement under §2K2.1(b)(8). Section 2K2.1(b)(8) applies to those defendants who receive an increase at subsection (b)(5) and who committed the offense in connection with the defendant's participation in an organization of five or more persons, knowing, or acting with willful blindness or conscious avoidance of knowledge, that the organization has as one of its primary purposes the commission of criminal offenses.

To ensure that a defendant would not receive the enhancement based solely on evidence unrelated to the criminal act or mere inclusion in gang databases, the enhancement requires that the defendant committed the offense "in connection with" the defendant's "participation" in a criminal organization, and that the defendant knew or consciously avoided knowledge of the criminal nature of the organization's activities. As with other amendments this year, the Commission determined that the doctrines of "willful blindness" and "conscious avoidance" are "well established in criminal law." *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766, 769 (2011) (noting that, while the Courts of Appeals articulate the "willful blindness" or "conscious avoidance" doctrines slightly differently, "[the Courts of Appeals] all appear to agree on two basic requirements: (1) The defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.").

Finally, the Commission determined that a 2-level increase for defendants receiving this enhancement is appropriate because specific offense characteristics accounting for other aggravating factors, such as the number of firearms and the use or possession of any firearm or ammunition in connection with another felony offense, may also apply to gang-affiliated defendants in addition to the new enhancement at subsection (b)(8). Accordingly, the Commission determined that an incremental 2-level enhancement appropriately and adequately differentiates straw purchasing and firearms trafficking defendants affiliated with organized crime from those who are unaffiliated.

### *Reduction for Mitigating Circumstances*

The amendment amends §2K2.1 to respond to section 12004(a)(5) of the Act, which directs the Commission to consider an amendment accounting for straw purchasers with mitigating circumstances. The amendment implements this portion of the directive by creating a new specific offense characteristic at §2K2.1(b)(9) providing a 2-level reduction available to defendants who receive an increase at subsection (b)(5) and satisfy other eligibility criteria. The amendment also deletes Application Note 15, which provided for a downward departure for certain straw purchasers, because subsection (b)(9) provides a reduction with broader criteria.

Consistent with congressional intent that the reduction apply to straw purchasers without significant criminal histories, a defendant must have no more than 1 criminal history point to qualify for the specific offense characteristic. Also consistent with congressional intent that the Commission account for mitigating circumstances, the adjustment applies to a defendant motivated by an intimate or familial relationship or by threats or fear who was otherwise unlikely to commit such an offense, or to a defendant who was unusually vulnerable due to physical or mental conditions. The Commission determined that such qualifiers appropriately ensure that the reduction is not so broad as to include highly culpable defendants, while also ensuring it is not so narrow as to exclude the less culpable defendants.

Similarly, the Commission determined that a 2-level reduction is appropriate to ensure that the magnitude of the reduction matches the magnitude of the increase provided in subsections (b)(5)(A) and (B) so that qualifying defendants do not receive increased penalties as a result of the amendment taken as a whole.

### *Firearms Not Marked with a Serial Number*

Finally, the amendment amends §2K2.1 to account for privately made firearms not marked with a serial number, commonly referred to as "ghost guns." The amendment provides a 4-level enhancement if the defendant knew that the offense involved a firearm not marked with a serial number, or the defendant was willfully blind or consciously avoided knowing this fact.

In adding the enhancement, the Commission concluded that there is no meaningful distinction between a firearm with an obliterated serial number, which has long-triggered a 4-level enhancement under §2K2.1(b)(4), and a firearm that is not marked with a serial number. The Commission also concluded that firearms not marked with a serial number share the traits that led the Commission to implement a 4-level enhancement for firearms with altered or obliterated serial numbers: "difficulty in tracing firearms with altered or obliterated serial numbers, and the increased market for these types of weapons." USSG App. C, amend. 691 (effective Nov. 1, 2006). Specifically, the Commission shared concerns raised by the Department of Justice regarding the proliferation of ghost guns, the increased frequency with which ghost guns are used in connection with criminal activity, and the difficulty in tracing these firearms. Therefore, the Commission

concluded that the same 4-level enhancement applied in offenses involving an altered or obliterated serial number is also appropriate for firearms not marked with a serial number.

The Commission determined that the enhancement should apply only to those defendants who knew or consciously avoided knowing that the firearm was not marked with a serial number. The amendment also specifically excepts firearms manufactured before the effective date of the Gun Control Act of 1968, which imposed the requirement that federal firearms licensees serialize newly manufactured or imported firearms.

The amendment also makes conforming changes to Application Note 8.

7.     **Amendment:** Section 3E1.1(b) is amended by inserting after "1 additional level." the following: "The term 'preparing for trial' means substantive preparations taken to present the government's case against the defendant to a jury (or judge, in the case of a bench trial) at trial. 'Preparing for trial' is ordinarily indicated by actions taken close to trial, such as preparing witnesses for trial, in limine motions, proposed voir dire questions and jury instructions, and witness and exhibit lists. Preparations for pretrial proceedings (such as litigation related to a charging document, discovery motions, and suppression motions) ordinarily are not considered 'preparing for trial' under this subsection. Post-conviction matters (such as sentencing objections, appeal waivers, and related issues) are not considered 'preparing for trial.' ".

The Commentary to §3E1.1 captioned "Application Notes" is amended in Note 6 by striking "The government should not withhold such a motion based on interests not identified in §3E1.1, such as whether the defendant agrees to waive his or her right to appeal.".

**Reason for Amendment:** This amendment responds to circuit conflicts over whether a reduction under subsection (b) of §3E1.1 (Acceptance of Responsibility), which requires a motion from the government, may be withheld or denied if a defendant moves to suppress evidence or raises sentencing challenges. The amendment addresses the circuit conflicts by providing a definition of the term "preparing for trial," which appears in §3E1.1(b) and Application Note 6 to §3E1.1. The amendment also deletes hortatory language that the Commission previously added to Application Note 6 providing that the "government should not withhold such a motion based on interests not identified in §3E1.1, such as whether the defendant agrees to waive his or her right to appeal." *See* USSG App. C, amend. 775 (effective Nov. 1, 2013).

The amendment defines "preparing for trial" as "substantive preparations taken to present the government's case against the defendant to a jury (or judge, in the case of a bench trial) at trial." The amendment further provides examples of actions that ordinarily indicate preparing for trial (such as preparing witnesses for trial, in limine motions, proposed voir dire questions and jury instructions, and witnesses and exhibit lists). The amendment further provides that preparations for pretrial proceedings (such as litigation related to a charging document, discovery motions, and suppression motions) ordinarily

are not considered preparing for trial, and that post-conviction matters (such as sentencing objections, appeal waivers, and related issues) are not considered preparing for trial.

As Justices Sotomayor and Gorsuch observed in 2021, the conflict as to whether a suppression hearing is a valid basis for denying a §3E1.1(b) reduction is both longstanding and has a potentially significant impact on defendants. *See Longoria v. United States*, 141 S. Ct. 978, 979 (2021) (statement of Sotomayor, J., with whom Gorsuch, J. joins, respecting the denial of certiorari, "emphasiz[ing] the need for clarification from the Commission" on this "important and longstanding split among the Courts of Appeals over the proper interpretation of § 3E1.1(b)"). Three circuits (the Third, Fifth, and Sixth Circuits) have permitted the government to withhold a §3E1.1(b) motion based on a suppression motion, while five circuits (the First, Second, Ninth, Tenth, and D.C. Circuits) have held that a reduction may not be denied based on a suppression motion. *Compare United States v. Longoria*, 958 F.3d 372 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 978 (2021), *United States v. Collins*, 683 F.3d 697 (6th Cir. 2012), and *United States v. Drennon*, 516 F.3d 160 (3d Cir. 2008), *with United States v. Vargas*, 961 F.3d 566 (2d Cir. 2020), *United States v. Price*, 409 F.3d 436 (D.C. Cir. 2005), *United States v. Marquez*, 337 F.3d 1203 (10th Cir. 2003), *United States v. Marroquin*, 136 F.3d 220 (1st Cir. 1998), and *United States v. Kimple*, 27 F.3d 1409 (9th Cir. 1994).

Similarly, the First, Third, Seventh, and Eighth Circuits have held that the government may withhold a §3E1.1(b) motion based on sentencing challenges, while the Second and Fifth Circuits have held that it may not. *Compare United States v. Adair*, 38 F.4th 341 (3d Cir. 2022), *United States v. Jordan*, 877 F.3d 391 (8th Cir. 2017), *United States v. Sainz-Preciado*, 566 F.3d 708 (7th Cir. 2009), and *United States v. Beatty*, 538 F.3d 8 (1st Cir. 2008), *with United States v. Castillo*, 779 F.3d 318 (5th Cir. 2015), and *United States v. Lee*, 653 F.3d 170 (2d Cir. 2011).

These conflicts have resulted in variation in §3E1.1(b) motion practice across—and even within—judicial districts. In some jurisdictions, defendants receive the additional reduction as a matter of course, even if they assert pre-trial or post-conviction challenges. In others, the §3E1.1(b) motion has been withheld based on motions to suppress, sentencing challenges, or other grounds. Because the sentencing impact of losing one additional level under §3E1.1(b) can be significant, the practice in the latter districts has had a chilling effect, deterring defendants from pursuing certain evidentiary and sentencing challenges.

The Commission promulgated this amendment to decrease variation between jurisdictions in applying §3E1.1(b). The amendment also aims to minimize any deterrent effect on defendants' ability to exercise their constitutional rights. *See also* §3E1.1, comment. (n.2) (allowing consideration for the adjustment where a defendant exercises constitutional rights to trial to raise a constitutional challenge to a statute or challenge the applicability of a statute to the defendant's conduct).

In promulgating this amendment, the Commission recognizes that these circuit conflicts involve guideline and commentary provisions that Congress directly amended, and that Congress also directed the Commission not to "alter or repeal" the congressional amendments. *See* Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003, Pub. L. 108–21, § 401(g), (j)(4), 117 Stat. 650. In recognition of this limitation, the amendment defines a term that the congressional amendments did not define—"preparing for trial"—without altering or repealing the amendments that Congress made.

**8.    Amendment:**

**Part A (Status Points under §4A1.1)**

The Commentary to §2P1.1 captioned "Application Notes" is amended in Note 5 by striking "§4A1.1(d)" and inserting "§4A1.1(e)".

Section 4A1.1 is amended—

by striking subsection (d) as follows:

"(d)    Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.";

by redesignating subsection (e) as subsection (d);

and by inserting at the end the following new subsection (e):

"(e)    Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.".

The Commentary to §4A1.1 captioned "Application Notes" is amended—

by striking Note 4 as follows:

"4.    *§4A1.1(d).* Two points are added if the defendant committed any part of the instant offense (*i.e.*, any relevant conduct) while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. Failure to report for service of a sentence of imprisonment is to be treated as an escape from such sentence. *See* §4A1.2(n). For the purposes of this subsection, a 'criminal justice sentence' means a sentence countable under §4A1.2 (Definitions and Instructions for Computing Criminal History) having a custodial or supervisory component, although active

supervision is not required for this subsection to apply. For example, a term of unsupervised probation would be included; but a sentence to pay a fine, by itself, would not be included. A defendant who commits the instant offense while a violation warrant from a prior sentence is outstanding (*e.g.*, a probation, parole, or supervised release violation warrant) shall be deemed to be under a criminal justice sentence for the purposes of this provision if that sentence is otherwise countable, even if that sentence would have expired absent such warrant. *See* §4A1.2(m).";

by redesignating Note 5 as Note 4;

in Note 4 (as so redesignated) by striking "§4A1.1(e)" each place such term appears and inserting "§4A1.1(d)";

and by inserting at the end the following new note 5:

"5.     *§4A1.1(e)*. One point is added if the defendant (1) receives 7 or more points under §4A1.1(a) through (d), and (2) committed any part of the instant offense (*i.e.*, any relevant conduct) while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. Failure to report for service of a sentence of imprisonment is to be treated as an escape from such sentence. *See* §4A1.2(n). For the purposes of this subsection, a 'criminal justice sentence' means a sentence countable under §4A1.2 (Definitions and Instructions for Computing Criminal History) having a custodial or supervisory component, although active supervision is not required for this subsection to apply. For example, a term of unsupervised probation would be included; but a sentence to pay a fine, by itself, would not be included. A defendant who commits the instant offense while a violation warrant from a prior sentence is outstanding (*e.g.*, a probation, parole, or supervised release violation warrant) shall be deemed to be under a criminal justice sentence for the purposes of this provision if that sentence is otherwise countable, even if that sentence would have expired absent such warrant. *See* §4A1.2(m).".

The Commentary to §4A1.1 captioned "Background" is amended in the last paragraph by striking "Section 4A1.1(d) adds two points if the defendant was under a criminal justice sentence during any part of the instant offense" and inserting "Section 4A1.1(e) adds one point if the defendant receives 7 or more points under §4A1.1(a) through (d) and was under a criminal justice sentence during any part of the instant offense".

Section 4A1.2 is amended—

in subsection (a)(2) by striking "§4A1.1(e)" and inserting "§4A1.1(d)";

in subsection (m) by striking "§4A1.1(d)" and inserting "§4A1.1(e)";

in subsection (n) by striking "§4A1.1(d)" and inserting "§4A1.1(e)";

and in subsection (p) by striking "§4A1.1(e)" and inserting "§4A1.1(d)".

**Part B (Zero-Point Offenders)**

*Subpart 1 (Adjustment for Certain Zero-Point Offenders)*

Chapter Four is amended by inserting at the end the following new Part C:

"      PART C — ADJUSTMENT FOR CERTAIN ZERO-POINT OFFENDERS

§4C1.1.      *Adjustment for Certain Zero-Point Offenders*

(a)      *Adjustment*.—If the defendant meets all of the following criteria:

(1)      the defendant did not receive any criminal history points from Chapter Four, Part A;

(2)      the defendant did not receive an adjustment under §3A1.4 (Terrorism);

(3)      the defendant did not use violence or credible threats of violence in connection with the offense;

(4)      the offense did not result in death or serious bodily injury;

(5)      the instant offense of conviction is not a sex offense;

(6)      the defendant did not personally cause substantial financial hardship;

(7)      the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8)      the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);

(9)      the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and

(10)      the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;

decrease the offense level determined under Chapters Two and Three by 2 levels.

(b)    *Definitions and Additional Considerations.*—

(1)    'Dangerous weapon,' 'firearm,' 'offense,' and 'serious bodily injury' have the meaning given those terms in the Commentary to §1B1.1 (Application Instructions).

(2)    'Sex offense' means (A) an offense, perpetrated against a minor, under (i) chapter 109A of title 18, United States Code; (ii) chapter 110 of title 18, not including a recordkeeping offense; (iii) chapter 117 of title 18, not including transmitting information about a minor or filing a factual statement about an alien individual; or (iv) 18 U.S.C. § 1591; or (B) an attempt or a conspiracy to commit any offense described in subparagraphs (A)(i) through (iv) of this definition.

(3)    In determining whether the defendant's acts or omissions resulted in 'substantial financial hardship' to a victim, the court shall consider, among other things, the non-exhaustive list of factors provided in Application Note 4(F) of the Commentary to §2B1.1 (Theft, Property Destruction, and Fraud).

*Commentary*

*Application Notes*:

1.    *Application of Subsection (a)(6).*—The application of subsection (a)(6) is to be determined independently of the application of subsection (b)(2) of §2B1.1 (Theft, Property Destruction, and Fraud).

2.    *Upward Departure.*—An upward departure may be warranted if an adjustment under this guideline substantially underrepresents the seriousness of the defendant's criminal history. For example, an upward departure may be warranted if the defendant has a prior conviction or other comparable judicial disposition for an offense that involved violence or credible threats of violence.".

### Subpart 2 (Implementation of 28 U.S.C. § 994(j))

The Commentary to §5C1.1 captioned "Application Notes" is amended—

by inserting at the beginning of Note 1 the following new heading: "*Application of Subsection (a).*—";

by inserting at the beginning of Note 2 the following new heading: "*Application of Subsection (b).*—";

by inserting at the beginning of Note 3 the following new heading: "*Application of Subsection (c).*—";

by striking Note 4 as follows:

"If the defendant is a nonviolent first offender and the applicable guideline range is in Zone A or B of the Sentencing Table, the court should consider imposing a sentence other than a sentence of imprisonment, in accordance with subsection (b) or (c)(3). *See* 28 U.S.C. § 994(j). For purposes of this application note, a 'nonviolent first offender' is a defendant who has no prior convictions or other comparable judicial dispositions of any kind and who did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense of conviction. The phrase 'comparable judicial dispositions of any kind' includes diversionary or deferred dispositions resulting from a finding or admission of guilt or a plea of *nolo contendere* and juvenile adjudications.";

by redesignating Notes 5 through 10 as Notes 4 through 9, respectively;

by inserting at the beginning of Note 4 (as so redesignated) the following new heading: "*Application of Subsection (d).*—";

by inserting at the beginning of Note 5 (as so redesignated) the following new heading: "*Application of Subsection (e).*—";

by inserting at the beginning of Note 6 (as so redesignated) the following new heading: "*Departures Based on Specific Treatment Purpose.*—";

by inserting at the beginning of Note 7 (as so redesignated) the following new heading: "*Use of Substitutes for Imprisonment.*—";

by inserting at the beginning of Note 8 (as so redesignated) the following new heading: "*Residential Treatment Program.*—";

by inserting at the beginning of Note 9 (as so redesignated) the following new heading: "*Application of Subsection (f).*—";

and by inserting at the end the following new Note 10:

"10.   *Zero-Point Offenders.*—

   (A)   *Zero-Point Offenders in Zones A and B of the Sentencing Table.*—If the defendant received an adjustment under §4C1.1 (Adjustment for Certain Zero-Point Offenders) and the defendant's applicable guideline range is in

Zone A or B of the Sentencing Table, a sentence other than a sentence of imprisonment, in accordance with subsection (b) or (c)(3), is generally appropriate. *See* 28 U.S.C. § 994(j).

(B)    *Departure for Cases Where the Applicable Guideline Range Overstates the Gravity of the Offense.*—A departure, including a departure to a sentence other than a sentence of imprisonment, may be appropriate if the defendant received an adjustment under §4C1.1 (Adjustment for Certain Zero-Point Offenders) and the defendant's applicable guideline range overstates the gravity of the offense because the offense of conviction is not a crime of violence or an otherwise serious offense. *See* 28 U.S.C. § 994(j).".

### Subpart 3 (Additional Changes)

Chapter One, Part A is amended in Subpart 1(4)(d) (Probation and Split Sentences)—

by adding an asterisk after "community confinement or home detention.";

by adding a second asterisk after "through departures.*";

and by striking the following Note:

"*Note: Although the Commission had not addressed 'single acts of aberrant behavior' at the time the Introduction to the Guidelines Manual originally was written, it subsequently addressed the issue in Amendment 603, effective November 1, 2000. (*See* USSG App. C, amendment 603.)",

and inserting the following Notes:

"*Note: The Commission expanded Zones B and C of the Sentencing Table in 2010 to provide a greater range of sentencing options to courts with respect to certain offenders. (*See* USSG App. C, amendment 738.) In 2018, the Commission added a new application note to the Commentary to §5C1.1 (Imposition of a Term of Imprisonment), stating that if a defendant is a 'nonviolent first offender and the applicable guideline range is in Zone A or B of the Sentencing Table, the court should consider imposing a sentence other than a sentence of imprisonment.' (*See* USSG App. C, amendment 801.) In 2023, the Commission added a new Chapter Four guideline, at §4C1.1 (Adjustment for Certain Zero-Point Offenders), providing a decrease of 2 levels from the offense level determined under Chapters Two and Three for 'zero-point' offenders who meet certain criteria. In addition, the Commission further amended the Commentary to §5C1.1 to address the alternatives to incarceration available to 'zero-point' offenders by revising the application note in §5C1.1 that addressed 'nonviolent first offenders' to focus on 'zero-point' offenders. (*See* USSG App. C, amendment 821.)

**Note: Although the Commission had not addressed 'single acts of aberrant behavior' at the time the Introduction to the Guidelines Manual originally was written, it subsequently addressed the issue in Amendment 603, effective November 1, 2000. (*See* USSG App. C, amendment 603.)".

Section 4A1.3(b)(2)(A) is amended by striking "A departure" and inserting "Unless otherwise specified, a departure".

The Commentary to §4A1.3 captioned "Application Notes" is amended in Note 3 by striking "due to the fact that the lower limit of the guideline range for Criminal History Category I is set for a first offender with the lowest risk of recidivism" and inserting "unless otherwise specified".

### Part C (Impact of Simple Possession of Marihuana Offenses)

The Commentary to §4A1.3 captioned "Application Notes", as amended by Part B, Subpart 3 of this amendment, is further amended in Note 3 by striking the following:

"*Downward Departures*.—A downward departure from the defendant's criminal history category may be warranted if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. A departure below the lower limit of the applicable guideline range for Criminal History Category I is prohibited under subsection (b)(2)(A), unless otherwise specified.",

and inserting the following:

"*Downward Departures*.—

(A)    *Examples*.—A downward departure from the defendant's criminal history category may be warranted based on any of the following circumstances:

 (i)    The defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period.

 (ii)    The defendant received criminal history points from a sentence for possession of marihuana for personal use, without an intent to sell or distribute it to another person.

(B)    *Downward Departures from Criminal History Category I.*—A departure below the lower limit of the applicable guideline range for Criminal History Category I is prohibited under subsection (b)(2)(A), unless otherwise specified.".

**Reason for Amendment:** This amendment is the result of several Commission studies regarding the nature of the criminal history of federal offenders, including analyses of the

number and types of prior convictions included as criminal history and the ability of the criminal history rules to predict an offender's likelihood of rearrest. While these studies continue to recognize the close association between an offender's criminal history calculation under the guidelines and the likelihood of future recidivism, the amendment makes targeted changes to reduce the impact of providing additional criminal history points for offenders under a criminal justice sentence (commonly known as "status points"), to reduce recommended guideline ranges for offenders with zero criminal history points under the guidelines ("zero-point offenders"), and to recognize the changing legal landscape as it pertains to simple possession of marihuana offenses. These targeted amendments balance the Commission's mission of implementing data-driven sentencing policies with its duty to craft penalties that reflect the statutory purposes of sentencing.

### Part A – Status Points

Part A of the amendment addresses "status points" for offenders, namely the additional criminal history points given to offenders for the fact of having committed the instant offense while under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. The amendment redesignates current subsection (d) of §4A1.1, which addresses "status points," as subsection (e) and redesignates current subsection (e), which addresses multiple crimes of violence treated as a single sentence, as subsection (d). This redesignation is made for ease of application.

Under the previous "status points" provision, two criminal history points were added under §4A1.1(d) if the defendant committed the instant offense "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." The amendment limits the overall criminal history impact of "status points" in two ways. First, as revised, the "status points" provision under redesignated subsection (e) applies only to offenders with more serious criminal histories under the guidelines by requiring that an offender have seven or more criminal history points under subsections (a) through (d) in addition to having been under a criminal justice sentence at the time of the instant offense. Offenders with six or fewer criminal history points under subsections (a) through (d) will no longer receive "status points." Second, the amendment also reduces from two points to one point the "status points" assessed for offenders to whom the revised provision applies. Part A of the amendment also makes conforming changes to the Commentary to §4A1.1, §2P1.1 (Escape, Instigating or Assisting Escape), and §4A1.2 (Definitions and Instructions for Computing Criminal History).

As part of its study of criminal history, the Commission found that "status points" are relatively common in cases with at least one criminal history point, having been applied in 37.5 percent of cases with criminal history points over the last five fiscal years. Of the offenders who received "status points," 61.5 percent had a higher Criminal History Category as a result of the addition of the "status points." The Commission also recently published a series of research reports regarding the recidivism rates of federal offenders. *See, e.g.*, U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010

(2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. These reports again concluded that an offender's criminal history calculation under the guidelines is strongly associated with the likelihood of future recidivism by the defendant. In a related publication, the Commission also found, however, that status points add little to the overall predictive value associated with the criminal history score. *See* U.S. SENT'G COMM'N, REVISITING STATUS POINTS (2022), available at https://www.ussc.gov/research/research-reports/revisiting-status-points.

The Commission's action to limit the impact of "status points" builds upon its tradition of data-driven evolution of the guidelines. As described in the Introduction to Chapter Four, the original Commission envisioned status points as "consistent with the extant empirical research assessing correlates of recidivism and patterns of career criminal behavior" and therefore envisioned "status points" as being reflective of, among other sentencing goals, the increased likelihood of future recidivism. *See* USSG Ch.4, Pt.A, intro. comment. The original Commission also explained, however, that it would "review additional data insofar as they become available in the future." The Commission's recent research suggests that "status points" improve the predictive value of the criminal history score less than the original Commission may have expected, suggesting that the treatment of "status points" under Chapter Four should be refined.

Accordingly, the Commission determined that it was appropriate to address several concerns regarding the scope and impact of status points. In taking these steps, the Commission observed that the operation of the *Guidelines Manual* separately accounts for consecutive punishment imposed upon revocations of supervised release, a likely occurrence if an offender was under a criminal justice sentence during the commission of another offense. The Commission further recognized that it is also possible that an offender's criminal history score would be independently increased as the result of additional time imposed as the result of a revocation of probation or supervised release for the offense that also results in the addition of status points.

At the same time, by retaining "status points" for those offenders in higher criminal history categories, the Commission continues to recognize that "status points," like the other criminal history provisions in Chapter Four, reflect and serve multiple purposes of sentencing, including the offender's perceived lack of respect for the law, as reflected both in the offender's overall criminal history and the fact that the offender has reoffended while under a criminal justice sentence ordered by a court. *See* 18 U.S.C. § 3553(a)(2)(A)–(C).

The Commission concluded that accounting for status on a more limited basis continues to serve the broader purposes of sentencing while also addressing other concerns raised regarding the impact of status points.

### Part B – Zero-Point Offenders

Part B of the amendment includes three subparts making changes pertaining to offenders who did not receive any criminal history points from Chapter Four, Part A. Subpart 1

provides for an adjustment for certain offenders with zero criminal history points. Subpart 2 revises §5C1.1 (Imposition of a Term of Imprisonment) to implement the congressional directive at 28 U.S.C. § 994(j). Finally, Subpart 3 makes other conforming changes.

*Subpart 1 – Adjustment for Certain Zero-Point Offenders*

Subpart 1 of Part B of the amendment creates a new Chapter Four guideline at §4C1.1 (Adjustment for Certain Zero-Point Offenders). New §4C1.1 provides a decrease of two levels from the offense level determined under Chapters Two and Three for offenders who did not receive any criminal history points under Chapter Four, Part A and whose instant offense did not involve specified aggravating factors. In establishing new §4C1.1, the Commission was informed by its studies of recidivism among federal offenders, as well as other extensive data analyses of offenders with no criminal history points, and public comment. The Sentencing Table in Chapter Five, Part A is divided into six criminal history categories, from I (lowest) to VI (highest). Criminal History Category I includes offenders with zero criminal history points and those with one criminal history point. Recidivism data analyzed by the Commission shows, however, that offenders with zero criminal history points have considerably lower recidivism rates than other offenders, including offenders with one criminal history point. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Among other findings, the report concluded that "zero-point offenders" were less likely to be rearrested than "one point" offenders (26.8% compared to 42.3%), the largest variation of any comparison of offenders within the same Criminal History Category.

In promulgating this change, the Commission also considered the rates of departures and variances in cases involving offenders with no criminal history points. The Commission has long viewed the rates and extents of departures and variances from the applicable guideline ranges as a feedback mechanism from the courts that a particular area of the guidelines may warrant further review and possible amendment. In fiscal year 2021, 39.2 percent of offenders with zero criminal history points received a sentence within the guidelines range; by comparison, 47.4 percent of offenders with one criminal history point were sentenced within the guideline range. The Commission determined that the departure and variance rates for zero-point offenders, coupled with its recidivism data, warranted action.

The amendment applies to offenders with no criminal history points, including (1) offenders with no prior convictions; (2) offenders who have prior convictions that are not counted because those convictions were not within the time limits set forth in subsection (d) and (e) of §4A1.2 (Definitions and Instructions for Computing Criminal History); and (3) offenders who have prior convictions that are not used in computing the criminal history category for reasons other than their "staleness" (*e.g.*, sentences resulting from foreign or tribal court convictions, minor misdemeanor convictions, or infractions). In adopting this definition of "zero-point offenders," the Commission opted to hew to the long-standing and carefully crafted criminal history rules set forth in Chapter Four,

regarding which prior convictions count for criminal history purposes and which do not. The Commission also observed that attempts to exclude offenders with certain prior convictions could lead to increased complexity and litigation and require the additional practical step of investigating prior unscorable offenses for which records may not be readily available.

While determining that a reduction is appropriate for some offenders with zero criminal history points, the Commission also identified circumstances in which zero-point offenders are appropriately excluded from eligibility in light of the seriousness of the instant offense of conviction or the existence of aggravating factors in the instant offense (*e.g.*, where the offender used violence or credible threats of violence in connection with the offense or where the instant offense of conviction was a "sex offense"). The exclusionary criteria identified by the Commission were again informed by extensive data analyses and public comment. The Commission was also informed by existing legislation, including the congressionally established criteria for the statutory safety valve at 18 U.S.C. § 3553(f) and the recent firearms legislation set forth in the Bipartisan Safer Communities Act.

*Subpart 2 – Implementation of 28 U.S.C. § 994(j)*

Subpart 2 of Part B of the amendment revises the Commentary to §5C1.1 (Imposition of a Term of Imprisonment) that addresses "nonviolent first offenders." New Application Note 10(A) provides that if the defendant received an adjustment under new §4C1.1 and the defendant's applicable guideline range is in Zone A or B of the Sentencing Table, a sentence other than a sentence of imprisonment, in accordance with subsection (b) or (c)(3), is generally appropriate. New Application Note 10(B) adds a corresponding departure provision providing that a departure, including a departure to a sentence other than a sentence of imprisonment, may be appropriate if the offender received an adjustment under new §4C1.1 and the applicable guideline range overstates the gravity of the offense because the offense of conviction is not a crime of violence or an otherwise serious offense.

The changes to the Commentary to §5C1.1 respond to Congress's directive to the Commission at 28 U.S.C. § 994(j), directing the Commission to ensure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense. The Commission determined that the revised commentary serves Congress's intent in promulgating section 994(j) while providing appropriate limitations and guidance through reliance on the criteria set forth in new §4C1.1 and the specific statutory language set forth in section 994(j).

*Subpart 3 – Additional Changes*

Subpart 3 of Part B of the amendment makes a corresponding change to subsection (b)(2)(A) of §4A1.3 (Departures Based on Inadequacy of Criminal History Category (Policy Statement)) to provide that a departure below the lower limit of the

applicable guideline range for Criminal History Category I is prohibited, "unless otherwise specified." The amendment also revises an explanatory note in Chapter One, Part A, Subpart 1(4)(d) (Probation and Split Sentences) to detail amendments to the *Guidelines Manual* related to the implementation of 28 U.S.C. § 994(j), first offenders, and "zero-point offenders."

### Part C – Impact of Simple Possession of Marihuana Offenses

Part C of the amendment revises the Commentary to §4A1.3 (Departures Based on Inadequacy of Criminal History Category (Policy Statement)) to include sentences resulting from possession of marihuana offenses as an example of when a downward departure from the defendant's criminal history may be warranted. Specifically, Part C provides that a downward departure may be warranted if the defendant received criminal history points from a sentence for possession of marihuana for personal use, without an intent to sell or distribute it to another person. Most commenters, including the Department of Justice, supported this change. *See* Letter from Jonathan J. Wroblewski, Dir., Crim. Div., U.S. Dep't of Just., to Hon. Carlton W. Reeves, Chair, U.S. Sent'g Comm'n (Feb. 27, 2023), *in* U.S. SENT'G COMM'N, 2022–2023 AMENDMENT CYCLE PROPOSED AMENDMENTS/PUBLIC COMMENT (2023); *see also* U.S. SENT'G COMM'N, 2022–2023 AMENDMENT CYCLE PROPOSED AMENDMENTS/PUBLIC COMMENT (2023) (providing numerous public comment supporting the amendment).

The Commission also relied upon its recently published report on the impact of simple possession of marihuana offenses on sentencing. *See* U.S. SENT'G COMM'N, WEIGHING THE IMPACT OF SIMPLE POSSESSION OF MARIJUANA: TRENDS AND SENTENCING IN THE FEDERAL SYSTEM (2023), available at https://www.ussc.gov/research/research-reports/weighing-impact-simple-possession-marijuana. In that study, the Commission found that 4,405 federal offenders (8.0%) received criminal history points under the federal sentencing guidelines for prior marihuana possession sentences in fiscal year 2021. Most such prior sentences were for state court convictions resulting in less than 60 days in prison or non-custodial sentences. The Commission also found informative that ten percent (10.2%) of these 4,405 offenders had no other criminal history points, and that for 40 percent (40.1%) of the 4,405 offenders (1,765), the criminal history points for prior marihuana possession sentences resulted in a higher Criminal History Category.

**9.     Amendment:** The Commentary to §2L1.2 captioned "Application Notes" is amended in Note 2, in the paragraph that begins " 'Crime of violence' means", by inserting after "territorial jurisdiction of the United States." the following: " 'Robbery' is the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining. The phrase 'actual or threatened force' refers to force that is sufficient to overcome a victim's resistance.".

Section 4B1.2(a) is amended—

by inserting at the beginning the following new heading "*Crime of Violence*.—";

and in paragraph (1) by striking "another," and inserting "another;".

Section 4B1.2(b) is amended by striking the following:

"The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.",

and inserting the following:

"*Controlled Substance Offense*.—The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1)     prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense; or

(2)     is an offense described in 46 U.S.C. § 70503(a) or § 70506(b).".

Section 4B1.2(c) is amended by inserting at the beginning the following new heading "*Two Prior Felony Convictions*.—".

Section 4B1.2 is amended by inserting at the end the following two new subsections (d) and (e):

"(d)     *Inchoate Offenses Included*.—The terms 'crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, attempting to commit, or conspiring to commit any such offense.

(e)     *Additional Definitions*.—

(1)     *Forcible Sex Offense*.—'Forcible sex offense' includes where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced. The offenses of sexual abuse of a minor and statutory rape are included only if the sexual abuse of a minor or statutory rape was (A) an offense described in 18 U.S.C. § 2241(c) or (B) an offense under state law that would have

been an offense under section 2241(c) if the offense had occurred within the special maritime and territorial jurisdiction of the United States.

(2)   *Extortion*.—'Extortion' is obtaining something of value from another by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury.

(3)   *Robbery*.—'Robbery' is the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining. The phrase 'actual or threatened force' refers to force that is sufficient to overcome a victim's resistance.

(4)   *Prior Felony Conviction*.—'Prior felony conviction' means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed. A conviction for an offense committed at age eighteen or older is an adult conviction. A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted (*e.g.*, a federal conviction for an offense committed prior to the defendant's eighteenth birthday is an adult conviction if the defendant was expressly proceeded against as an adult).".

The Commentary to §4B1.2 captioned "Application Notes" is amended in Note 1—

in the heading by striking "*Definitions*.—" and inserting "*Further Considerations Regarding 'Crime of Violence' and 'Controlled Substance Offense'*.—";

by striking the first three paragraphs as follows:

" 'Crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.

'Forcible sex offense' includes where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced. The offenses of sexual abuse of a minor and statutory rape are included only if the sexual abuse of a minor or statutory rape was (A) an offense described in 18 U.S.C. § 2241(c) or (B) an offense under state law that would have been an offense under section 2241(c) if the offense had occurred within the special maritime and territorial jurisdiction of the United States.

'Extortion' is obtaining something of value from another by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury.";

and by striking the last paragraph as follows:

" 'Prior felony conviction' means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed. A conviction for an offense committed at age eighteen or older is an adult conviction. A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted (*e.g.*, a federal conviction for an offense committed prior to the defendant's eighteenth birthday is an adult conviction if the defendant was expressly proceeded against as an adult).".

**Reason for Amendment:** This amendment is a result of the Commission's work on §4B1.2 (Definitions of Terms Used in Section 4B1.1) regarding several application issues that have arisen in the context of the career offender guideline. As part of this study, the Commission considered varying case law interpreting certain guideline definitions and commentary to the guideline. Informed by the case law, public comment and relevant sentencing data, this amendment specifically addresses application issues regarding the meaning of "robbery" and "extortion" and the treatment of inchoate offenses. The amendment also makes necessary changes to further implement the congressional directive at 28 U.S.C. § 994(h).

The amendment makes several changes to address a circuit conflict regarding the authoritative weight afforded to certain commentary to §4B1.2. The commentary to §4B1.2 prior to the amendment provided that the definitions of "crime of violence" and "controlled substance offense" include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses. Although most circuits had previously held that this commentary was authoritative under *Stinson v. United States*, 508 U.S. 36 (1993), several courts have now concluded that the guideline definition of "controlled substance offense" does not include inchoate offenses because such offenses are not expressly included in the guideline text. *See United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (*en banc*); *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022); *United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021) (*en banc*); *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (*en banc*); *United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018). Several courts held that the Commission exceeded its authority under *Stinson* when it attempted to incorporate inchoate offenses into §4B1.2(b)'s definition through the commentary, finding that the commentary can only interpret or explain the guideline, it cannot expand its scope by adding qualifying offenses. *See, e.g., Havis*, 927 F.3d at 385–87. More recently, courts have relied on *Kisor v. Wilkie*, 139 S. Ct. 2400 (2022), to hold that guideline commentary should not be afforded deference unless the guideline text is genuinely ambiguous. *See, e.g., Dupree*, 57 F.4th at 1275. Applying the *Kisor* holding to the guidelines, courts have concluded that the plain language definition of "controlled substance offense" in §4B1.2 unambiguously excludes inchoate offenses. Similarly,

courts have held that "crime of violence" excludes conspiracies because the §4B1.2 commentary does not warrant *Kisor* deference. *See, e.g.*, *United States v. Abreu*, 32 F.4th 271, 277–78 (3d Cir. 2022).

The amendment addresses this circuit conflict by moving, without change, the commentary including certain inchoate and accessory offenses in the definitions of "crime of violence" and "controlled substance offense" to the text of the guideline. While not the subject of the circuit conflict, the amendment also moves the definitions of enumerated offenses (*i.e.*, "forcible sex offense" and "extortion") and "prior felony conviction" from the commentary to a new subsection (e) in the guideline to avoid similar challenges to their applicability.

The amendment next addresses a concern that Hobbs Act robbery offenses no longer qualify as "crimes of violence" under §4B1.2. In 2016, the Commission amended §4B1.2 to, among other things, delete the "residual clause" and revise the "enumerated clause" by moving enumerated offenses that were previously listed in the commentary to the guideline itself. Although the guideline generally relies on existing case law for purposes of defining most enumerated offenses, the amendment added to the Commentary to §4B1.2 definitions for two of the enumerated offenses: "forcible sex offense" and "extortion." Consistent with the Commission's goal of focusing the career offender and related enhancements on the most dangerous offenders, the amendment narrowed the generic definition of extortion by limiting it to offenses having an element of force or an element of fear or threat "of physical injury," as opposed to non-violent threats such as injury to reputation. As such, extortion is defined as "obtaining something of value from another by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury."

After the 2016 amendment, every Court of Appeals addressing the issue under the guidelines has held that Hobbs Act robbery is not a "crime of violence" under §4B1.2, reasoning that neither generic robbery nor the guidelines definition of extortion encompass threats against property while the Hobbs Act defines "robbery" as, among other things, "the unlawful taking or obtaining of personal property . . . by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or *property* . . . . " *See* 18 U.S.C. § 1951(b)(1) (emphasis added); *United States v. Chappelle*, 41 F.4th 102 (2d Cir. 2022); *United States v. Scott*, 14 F.4th 190 (3d Cir. 2021); *United States v. Prigan*, 8 F.4th 1115 (9th Cir. 2021); *United States v. Green*, 996 F.3d 176 (4th Cir. 2021); *Bridges v. United States*, 991 F.3d 793 (7th Cir. 2021); *United States v. Eason*, 953 F.3d 1184 (11th Cir. 2020); *United States v. Camp*, 903 F.3d 594 (6th Cir. 2018); *United States v. O'Connor*, 874 F.3d 1147 (10th Cir. 2017).

The amendment amends §4B1.2 to add to the new subsection (e) a definition of "robbery" that mirrors the "robbery" definition at 18 U.S.C. § 1951(b)(1) and makes a conforming change to §2L1.2 (Illegal Reentry), which also includes robbery as an enumerated offense. The Commission views the recent decisions holding that Hobbs Act robbery is not a crime of violence under the guidelines as an unintended consequence of the 2016 amendment to the career offender guideline meant to remove threats to

reputation. In addition, the Commission conducted an analysis of recent cases and found that the Hobbs Act robberies overwhelmingly involved violence.

The amendment clarifies that "actual or threatened force" for purposes of the new "robbery" definition is "force sufficient to overcome a victim's resistance." The Commission concludes that such definition, relying on the Supreme Court's decision in *Stokeling v. United States*, 139 S. Ct. 544 (2019), would eliminate potential litigation over the meaning of actual or threatened force in this context and is consistent with the level of force necessary for a robbery under the force clause.

Finally, the amendment revises the definition of "controlled substance offense" in §4B1.2(b) to include "an offense described in 46 U.S.C. § 70503(a) or § 70506(b)." The directive at 28 U.S.C. § 994(h) instructs the Commission to assure that "the guidelines specify a term of imprisonment at or near the maximum term authorized" for offenders who are 18 years or older and have been convicted of a felony that is, and have previously been convicted of two or more felonies that are, among other things, "an offense described in . . . chapter 705 of title 46." *See* 28 U.S.C. § 994(h). In 2016, Congress enacted the Coast Guard Authorization Act of 2015, Pub. L. 114–120 (2016), which amended Chapter 705 of Title 46 by adding two new offenses to section 70503(a), in subparagraphs (2) and (3). Following this statutory change, these two new offenses are not covered by the pre-amendment definition of "controlled substance offense" in §4B1.2 as required by the directive.

10.  **Amendment:** Section 3D1.2(d) is amended by striking "§§2G1.1, 2G2.1;" and inserting "§§2G1.1, 2G1.3, 2G2.1;".

The Commentary to §5F1.7 captioned "Background" is amended—

by striking "six months" and inserting "6 months";

by striking "as the Bureau deems appropriate. 18 U.S.C. § 4046.' " and inserting "as the Bureau deems appropriate.' 18 U.S.C. § 4046.";

and by striking the final paragraph as follows:

"       The Bureau of Prisons has issued an operations memorandum (174-90 (5390), November 20, 1990) that outlines eligibility criteria and procedures for the implementation of this program (which the Bureau of Prisons has titled 'intensive confinement program'). Under these procedures, the Bureau will not place a defendant in an intensive confinement program unless the sentencing court has approved, either at the time of sentencing or upon consultation after the Bureau has determined that the defendant is otherwise eligible. In return for the successful completion of the 'intensive confinement' portion of the program, the defendant is eligible to serve the remainder of his term of imprisonment in a graduated release program comprised of community corrections center and home confinement phases.",

and inserting the following:

"       In 1990, the Bureau of Prisons issued an operations memorandum (174-90 (5390), November 20, 1990) that outlined eligibility criteria and procedures for the implementation of a shock incarceration program (which the Bureau of Prisons titled the 'intensive confinement program'). In 2008, however, the Bureau of Prisons terminated the program and removed the rules governing its operation. *See* 73 FR 39863 (July 11, 2008).".

**Reason for Amendment:** This two-part amendment responds to miscellaneous guideline application issues.

First, the amendment revises subsection (d) of §3D1.2 (Grouping of Closely Related Counts) to provide that multiple counts involving more than one victim sentenced under §2G1.3 (Promoting a Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Transportation of Minors to Engage in a Commercial Sex Act or Prohibited Sexual Conduct; Travel to Engage in Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Sex Trafficking of Children; Use of Interstate Facilities to Transport Information about a Minor) are explicitly excluded from grouping under §3D1.2(d). Subsection 3D1.2(d) provides that certain guidelines are excluded from the operation of the grouping rules in Chapter Three, Part D (Multiple Counts). Among the guidelines specifically excluded under §3D1.2(d) is §2G1.1 (Promoting a Commercial Sex Act or Prohibited Sexual Conduct with an Individual Other than a Minor). When §2G1.3 was promulgated in 2004, some offenses that were originally referenced to §2G1.1 were moved to the new §2G1.3, but §2G1.3 was not added to the list of excluded guidelines at §3D1.2(d). *See* USSG App. C, amend. 664 (effective date: Nov. 1, 2004). The amendment corrects that oversight and treats §2G1.3 similarly to §2G1.1.

Second, the amendment updates the Commentary to §5F1.7 (Shock Incarceration Program (Policy Statement)) to reflect that the Bureau of Prisons (BOP) no longer operates a shock incarceration program. The Commentary to §5F1.7 describes the authority of the BOP to operate a shock incarceration program and the procedures that the BOP established in 1990 regarding operation of such a program. However, the BOP terminated its shock incarceration program and removed the rules governing its operation in 2008. The amendment updates the Commentary to §5F1.7 to reflect that shock incarceration is no longer a potential sentencing option, foreclosing any potential confusion on its current availability.

11.   **Amendment:** The Commentary to §1B1.1 captioned "Application Notes" is amended in Note 1(E) by striking "(*e.g.* a defendant" and inserting "(*e.g.*, a defendant".

The Commentary to §1B1.3 captioned "Background" is amended by striking "the guidelines in those Chapters" and inserting "the guidelines in those chapters".

*Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index*

The Commentary to §1B1.4 captioned "Background" is amended by striking "in imposing sentence within that range" and inserting "in imposing a sentence within that range".

The Commentary to §1B1.10 captioned "Background" is amended by striking "Title 18" and inserting "title 18".

The Commentary to §1B1.11 captioned "Background" is amended by striking "133 S. Ct. 2072, 2078" and inserting "569 U.S. 530, 533".

The Commentary to §2A4.2 captioned "Statutory Provisions" is amended by striking "§§ 876," and inserting "§§ 876(a),".

The Commentary to §2A6.1 captioned "Statutory Provisions" is amended by striking "876," and inserting "876(c),".

The Commentary to §2B3.2 captioned "Statutory Provisions" is amended by striking "§§ 875(b), 876," and inserting "§§ 875(b), (d), 876(b), (d),".

The Commentary to §2D1.1 captioned "Application Notes" is amended—

in Note 8(A) by striking "the statute (21 U.S.C. § 841(b)(1)), as the primary basis" and inserting "the statute (21 U.S.C. § 841(b)(1)) as the primary basis", and by striking "fentanyl, LSD and marihuana" and inserting "fentanyl, LSD, and marihuana";

in Note 8(D)—

under the heading relating to Schedule I or II Opiates, by striking the following:

| | |
|---|---:|
| "1 gm of Heroin = | 1 kg |
| 1 gm of Dextromoramide = | 670 gm |
| 1 gm of Dipipanone = | 250 gm |
| 1 gm of 1-Methyl-4-phenyl-4-propionoxypiperidine/MPPP = | 700 gm |
| 1 gm of 1-(2-Phenylethyl)-4-phenyl-4-acetyloxypiperidine/PEPAP = | 700 gm |
| 1 gm of Alphaprodine = | 100 gm |
| 1 gm of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide) = | 2.5 kg |
| 1 gm of a Fentanyl Analogue = | 10 kg |
| 1 gm of Hydromorphone/Dihydromorphinone = | 2.5 kg |
| 1 gm of Levorphanol = | 2.5 kg |
| 1 gm of Meperidine/Pethidine = | 50 gm |
| 1 gm of Methadone = | 500 gm |
| 1 gm of 6-Monoacetylmorphine = | 1 kg |
| 1 gm of Morphine = | 500 gm |
| 1 gm of Oxycodone (actual) = | 6700 gm |
| 1 gm of Oxymorphone = | 5 kg |
| 1 gm of Racemorphan = | 800 gm |

*Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index*

| | |
|---|---:|
| 1 gm of Codeine = | 80 gm |
| 1 gm of Dextropropoxyphene/Propoxyphene-Bulk = | 50 gm |
| 1 gm of Ethylmorphine = | 165 gm |
| 1 gm of Hydrocodone (actual) = | 6700 gm |
| 1 gm of Mixed Alkaloids of Opium/Papaveretum = | 250 gm |
| 1 gm of Opium = | 50 gm |
| 1 gm of Levo-alpha-acetylmethadol (LAAM) = | 3 kg", |

and inserting the following:

| | |
|---|---:|
| "1 gm of 1-(2-Phenylethyl)-4-phenyl-4-acetyloxypiperidine (PEPAP) = | 700 gm |
| 1 gm of 1-Methyl-4-phenyl-4-propionoxypiperidine (MPPP) = | 700 gm |
| 1 gm of 6-Monoacetylmorphine = | 1 kg |
| 1 gm of Alphaprodine = | 100 gm |
| 1 gm of Codeine = | 80 gm |
| 1 gm of Dextromoramide = | 670 gm |
| 1 gm of Dextropropoxyphene/Propoxyphene-Bulk = | 50 gm |
| 1 gm of Dipipanone = | 250 gm |
| 1 gm of Ethylmorphine = | 165 gm |
| 1 gm of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide) = | 2.5 kg |
| 1 gm of a Fentanyl Analogue = | 10 kg |
| 1 gm of Heroin = | 1 kg |
| 1 gm of Hydrocodone (actual) = | 6,700 gm |
| 1 gm of Hydromorphone/Dihydromorphinone = | 2.5 kg |
| 1 gm of Levo-alpha-acetylmethadol (LAAM) = | 3 kg |
| 1 gm of Levorphanol = | 2.5 kg |
| 1 gm of Meperidine/Pethidine = | 50 gm |
| 1 gm of Methadone = | 500 gm |
| 1 gm of Mixed Alkaloids of Opium/Papaveretum = | 250 gm |
| 1 gm of Morphine = | 500 gm |
| 1 gm of Opium = | 50 gm |
| 1 gm of Oxycodone (actual) = | 6,700 gm |
| 1 gm of Oxymorphone = | 5 kg |
| 1 gm of Racemorphan = | 800 gm"; |

under the heading relating to Cocaine and Other Schedule I and II Stimulants (and their immediate precursors), by striking the following:

| | |
|---|---:|
| "1 gm of Cocaine = | 200 gm |
| 1 gm of N-Ethylamphetamine = | 80 gm |
| 1 gm of Fenethylline = | 40 gm |
| 1 gm of Amphetamine = | 2 kg |
| 1 gm of Amphetamine (Actual) = | 20 kg |
| 1 gm of Methamphetamine = | 2 kg |
| 1 gm of Methamphetamine (Actual) = | 20 kg |
| 1 gm of "Ice" = | 20 kg |

| | |
|---|---:|
| 1 gm of Khat = | .01 gm |
| 1 gm of 4-Methylaminorex ('Euphoria') = | 100 gm |
| 1 gm of Methylphenidate (Ritalin) = | 100 gm |
| 1 gm of Phenmetrazine = | 80 gm |
| 1 gm Phenylacetone/$P_2P$ (when possessed for the purpose of manufacturing methamphetamine) = | 416 gm |
| 1 gm Phenylacetone/$P_2P$ (in any other case) = | 75 gm |
| 1 gm Cocaine Base ('Crack') = | 3,571 gm |
| 1 gm of Aminorex = | 100 gm |
| 1 gm of N-N-Dimethylamphetamine = | 40 gm |
| 1 gm of N-Benzylpiperazine = | 100 gm", |

and inserting the following:

| | |
|---|---:|
| "1 gm of 4-Methylaminorex ('Euphoria') = | 100 gm |
| 1 gm of Aminorex = | 100 gm |
| 1 gm of Amphetamine = | 2 kg |
| 1 gm of Amphetamine (actual) = | 20 kg |
| 1 gm of Cocaine = | 200 gm |
| 1 gm of Cocaine Base ('Crack') = | 3,571 gm |
| 1 gm of Fenethylline = | 40 gm |
| 1 gm of 'Ice' = | 20 kg |
| 1 gm of Khat = | .01 gm |
| 1 gm of Methamphetamine = | 2 kg |
| 1 gm of Methamphetamine (actual) = | 20 kg |
| 1 gm of Methylphenidate (Ritalin) = | 100 gm |
| 1 gm of N-Benzylpiperazine = | 100 gm |
| 1 gm of N-Ethylamphetamine = | 80 gm |
| 1 gm of N-N-Dimethylamphetamine = | 40 gm |
| 1 gm of Phenmetrazine = | 80 gm |
| 1 gm of Phenylacetone ($P_2P$) (when possessed for the purpose of manufacturing methamphetamine) = | 416 gm |
| 1 gm of Phenylacetone ($P_2P$) (in any other case) = | 75 gm"; |

under the heading relating to Synthetic Cathinones (except Schedule III, IV, and V Substances), by striking "a synthetic cathinone" and inserting "a Synthetic Cathinone";

under the heading relating to LSD, PCP, and Other Schedule I and II Hallucinogens (and their immediate precursors), by striking the following:

| | |
|---|---:|
| "1 gm of Bufotenine = | 70 gm |
| 1 gm of D-Lysergic Acid Diethylamide/Lysergide/LSD = | 100 kg |
| 1 gm of Diethyltryptamine/DET = | 80 gm |
| 1 gm of Dimethyltryptamine/DM = | 100 gm |
| 1 gm of Mescaline = | 10 gm |
| 1 gm of Mushrooms containing Psilocin and/or | |

*Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index*

| | |
|---|---:|
| Psilocybin (Dry) = | 1 gm |
| 1 gm of Mushrooms containing Psilocin and/or | |
| Psilocybin (Wet) = | 0.1 gm |
| 1 gm of Peyote (Dry) = | 0.5 gm |
| 1 gm of Peyote (Wet) = | 0.05 gm |
| 1 gm of Phencyclidine/PCP = | 1 kg |
| 1 gm of Phencyclidine (actual) /PCP (actual) = | 10 kg |
| 1 gm of Psilocin = | 500 gm |
| 1 gm of Psilocybin = | 500 gm |
| 1 gm of Pyrrolidine Analog of Phencyclidine/PHP = | 1 kg |
| 1 gm of Thiophene Analog of Phencyclidine/TCP = | 1 kg |
| 1 gm of 4-Bromo-2,5-Dimethoxyamphetamine/DOB = | 2.5 kg |
| 1 gm of 2,5-Dimethoxy-4-methylamphetamine/DOM = | 1.67 kg |
| 1 gm of 3,4-Methylenedioxyamphetamine/MDA = | 500 gm |
| 1 gm of 3,4-Methylenedioxymethamphetamine/MDMA = | 500 gm |
| 1 gm of 3,4-Methylenedioxy-N-ethylamphetamine/MDEA = | 500 gm |
| 1 gm of Paramethoxymethamphetamine/PMA = | 500 gm |
| 1 gm of 1-Piperidinocyclohexanecarbonitrile/PCC = | 680 gm |
| 1 gm of N-ethyl-1-phenylcyclohexylamine (PCE) = | 1 kg", |

and inserting the following:

| | |
|---|---:|
| "1 gm of 1-Piperidinocyclohexanecarbonitrile (PCC) = | 680 gm |
| 1 gm of 4-Bromo-2,5-Dimethoxyamphetamine (DOB) = | 2.5 kg |
| 1 gm of 2,5-Dimethoxy-4-methylamphetamine (DOM) = | 1.67 kg |
| 1 gm of 3,4-Methylenedioxyamphetamine (MDA) = | 500 gm |
| 1 gm of 3,4-Methylenedioxymethamphetamine (MDMA) = | 500 gm |
| 1 gm of 3,4-Methylenedioxy-N-ethylamphetamine (MDEA) = | 500 gm |
| 1 gm of Bufotenine = | 70 gm |
| 1 gm of D-Lysergic Acid Diethylamide/Lysergide (LSD) = | 100 kg |
| 1 gm of Diethyltryptamine (DET) = | 80 gm |
| 1 gm of Dimethyltryptamine (DM) = | 100 gm |
| 1 gm of Mescaline = | 10 gm |
| 1 gm of Mushrooms containing Psilocin and/or | |
| Psilocybin (dry) = | 1 gm |
| 1 gm of Mushrooms containing Psilocin and/or | |
| Psilocybin (wet) = | 0.1 gm |
| 1 gm of N-ethyl-1-phenylcyclohexylamine (PCE) = | 1 kg |
| 1 gm of Paramethoxymethamphetamine (PMA) = | 500 gm |
| 1 gm of Peyote (dry) = | 0.5 gm |
| 1 gm of Peyote (wet) = | 0.05 gm |
| 1 gm of Phencyclidine (PCP) = | 1 kg |
| 1 gm of Phencyclidine (PCP) (actual) = | 10 kg |
| 1 gm of Psilocin = | 500 gm |
| 1 gm of Psilocybin = | 500 gm |
| 1 gm of Pyrrolidine Analog of Phencyclidine (PHP) = | 1 kg |

| 1 gm of Thiophene Analog of Phencyclidine (TCP) = | 1 kg"; |
|---|---|

under the heading relating to Schedule I Marihuana, by striking the following:

| "1 gm of Marihuana/Cannabis, granulated, powdered, etc. = | 1 gm |
|---|---|
| 1 gm of Hashish Oil = | 50 gm |
| 1 gm of Cannabis Resin or Hashish = | 5 gm |
| 1 gm of Tetrahydrocannabinol, Organic = | 167 gm |
| 1 gm of Tetrahydrocannabinol, Synthetic = | 167 gm", |

and inserting the following:

| "1 gm of Cannabis Resin or Hashish = | 5 gm |
|---|---|
| 1 gm of Hashish Oil = | 50 gm |
| 1 gm of Marihuana/Cannabis (granulated, powdered, etc.) = | 1 gm |
| 1 gm of Tetrahydrocannabinol (organic) = | 167 gm |
| 1 gm of Tetrahydrocannabinol (synthetic) = | 167 gm"; |

under the heading relating to Synthetic Cannabinoids (except Schedule III, IV, and V Substances), by striking "a synthetic cannabinoid" and inserting "a Synthetic Cannabinoid", and by striking " 'Synthetic cannabinoid,' for purposes of this guideline" and inserting " 'Synthetic Cannabinoid,' for purposes of this guideline";

under the heading relating to Schedule I or II Depressants (except gamma-hydroxybutyric acid), by striking "except gamma-hydroxybutyric acid" both places such term appears and inserting "except Gamma-hydroxybutyric Acid";

under the heading relating to Gamma-hydroxybutyric Acid, by striking "of gamma-hydroxybutyric acid" and inserting "of Gamma-hydroxybutyric Acid";

under the heading relating to Schedule III Substances (except ketamine), by striking "except ketamine" in the heading and inserting "except Ketamine";

under the heading relating to Ketamine, by striking "of ketamine" and inserting "of Ketamine";

under the heading relating to Schedule IV (except flunitrazepam), by striking "except flunitrazepam" in the heading and inserting "except Flunitrazepam";

under the heading relating to List I Chemicals (relating to the manufacture of amphetamine or methamphetamine), by striking "of amphetamine or methamphetamine" in the heading and inserting "of Amphetamine or Methamphetamine";

under the heading relating to Date Rape Drugs (except flunitrazepam, GHB, or ketamine), by striking "except flunitrazepam, GHB, or ketamine" in the heading and inserting "except Flunitrazepam, GHB, or Ketamine", by striking "of 1,4-butanediol" and

inserting "of 1,4-Butanediol", and by striking "of gamma butyrolactone" and inserting "of Gamma Butyrolactone";

in Note 9 in the Typical Weight Per Unit (Dose, Pill, or Capsule) Table, under the heading relating to Hallucinogens, by striking the following:

| | |
|---|---|
| "MDA | 250 mg |
| MDMA | 250 mg |
| Mescaline | 500 mg |
| PCP* | 5 mg |
| Peyote (dry) | 12 gm |
| Peyote (wet) | 120 gm |
| Psilocin* | 10 mg |
| Psilocybe mushrooms (dry) | 5 gm |
| Psilocybe mushrooms (wet) | 50 gm |
| Psilocybin* | 10 mg |
| 2,5-Dimethoxy-4-methylamphetamine (STP, DOM)* | 3 mg", |

and inserting the following:

| | |
|---|---|
| "2,5-Dimethoxy-4-methylamphetamine (STP, DOM)* | 3 mg |
| MDA | 250 mg |
| MDMA | 250 mg |
| Mescaline | 500 mg |
| PCP* | 5 mg |
| Peyote (dry) | 12 gm |
| Peyote (wet) | 120 gm |
| Psilocin* | 10 mg |
| Psilocybe mushrooms (dry) | 5 gm |
| Psilocybe mushrooms (wet) | 50 gm |
| Psilocybin* | 10 mg"; |

and in Note 21, by striking "Section §5C1.2(b)" and inserting "Section 5C1.2(b)".

The Commentary to §2D1.1 captioned "Background" is amended by striking "Public Law 103–237" and inserting "Public Law 104–237", and by inserting after "to change the title of the Drug Equivalency Tables to the 'Drug Conversion Tables.' " the following: "*See* USSG App. C, Amendment 808 (effective November 1, 2018).".

The Commentary to §2D2.3 captioned "Background" is amended by striking "Section 6482" and inserting "section 6482".

Section 2G2.1(b)(6)(A) is amended by striking "engage sexually explicit conduct" and inserting "engage in sexually explicit conduct".

The Commentary to §2H3.1 captioned "Application Notes" is amended in Note 5(B) by striking "(*e.g.* physical harm" and inserting "(*e.g.*, physical harm".

The Commentary to §2K2.4 captioned "Statutory Provisions" is amended by striking "§§ 844(h)" and inserting "§§ 844(h), (o)".

The Commentary to §2M1.1 captioned "Background" is amended by striking "this Part" and inserting "this part".

The Commentary to §2M4.1 captioned "Statutory Provisions" is amended by striking "50 U.S.C. App. § 462" and inserting "50 U.S.C. § 3811".

The Commentary to §2M5.1 captioned "Statutory Provisions" is amended by striking "50 U.S.C. App. §§ 2401–2420" and inserting "50 U.S.C. §§ 4601–4623. For additional statutory provision(s), *see* Appendix A (Statutory Index)".

The Commentary to §2M5.1 captioned "Application Notes" is amended—

in Note 3 by striking "50 U.S.C. App. § 2410" and inserting "50 U.S.C. § 4610";

and in Note 4 by striking "50 U.S.C. App. 2405" and inserting "50 U.S.C. § 4605".

The Commentary to §2M5.3 captioned "Application Notes" is amended in Note 1, in the paragraph that begins " 'Specially designated global terrorist' has", by striking "§ 594.513" and inserting "§ 594.310".

The Commentary to §2M6.1 captioned "Application Notes" is amended in Note 1—

by striking the following paragraph:

" 'Restricted person' has the meaning given that term in 18 U.S.C. § 175b(d)(2).",

and by striking the following paragraph:

" 'Vector' has the meaning given that term in 18 U.S.C. § 178(4).".

The Commentary to §2T1.1 captioned "Application Notes" is amended—

in Note 6, in the paragraph that begins " 'Gross income' has", by striking "§1.61" and inserting "§ 1.61-1";

and in Note 7 by striking "Subchapter C corporation" and inserting "subchapter C corporation".

The Commentary to §2T1.1 captioned "Background" is amended by striking "the treasury" and inserting "the Treasury".

Chapter Two, Part T, Subpart 2 is amended in the introductory commentary by striking "Parts I–IV of Subchapter J of Chapter 51 of Subtitle E of Title 26" and inserting "parts I–IV of subchapter J of chapter 51 of subtitle E of title 26, United States Code".

Chapter Two, Part T, Subpart 3 is amended in the introductory commentary by striking "Subpart" both places such term appears and inserting "subpart".

Chapter Three, Part A is amended in the introductory commentary by striking "Part" and inserting "part".

The Commentary to §3A1.1 captioned "Background" is amended by striking "Section 280003" and inserting "section 280003".

The Commentary to §3A1.2 captioned "Application Notes" is amended in Note 3 by striking "the victim was a government officer or employee, or a member of the immediate family thereof" and inserting "the victim was a government officer or employee, a former government officer or employee, or a member of the immediate family thereof".

Chapter Three, Part B is amended in the introductory commentary by striking "Part" and inserting "part".

The Commentary to §3C1.1 captioned "Application Notes" is amended in Note 4(I) by striking "Title 18" and inserting "title 18".

Chapter Three, Part D is amended in the introductory commentary by striking "Part" each place such term appears and inserting "part".

The Commentary to §3D1.1 captioned "Application Notes" is amended in Note 2 by striking "Part" both places such term appears and inserting "part".

The Commentary to §3D1.1 captioned "Background" is amended by striking "Chapter 3" and inserting "Chapter Three", and by striking "Chapter 4" and inserting "Chapter Four".

The Commentary to §3D1.2 captioned "Background" is amended by striking "Part" both places such term appears and inserting "part".

The Commentary to §3D1.3 captioned "Background" is amended by striking "Part" and inserting "part".

The Commentary to §3D1.4 captioned "Background" is amended by striking "Part" and inserting "part".

The Commentary to §4A1.3 captioned "Application Notes" is amended in Note 2(C)(v) by striking "this Chapter" and inserting "this chapter".

The Commentary to §4B1.1 captioned "Background" is amended by striking "Title 28" and inserting "title 28".

The Commentary to §5C1.1 captioned "Application Notes" is amended in Note 1 by striking "this Chapter" and inserting "this chapter".

The Commentary to §5E1.1 captioned "Application Notes" is amended in Note 1 by striking "Chapter" both places such term appears and inserting "chapter"; by striking "Title 18" both places such term appears and inserting "title 18"; and by striking "Subchapter C" and inserting "subchapter C".

The Commentary to §5E1.1 captioned "Background" is amended by striking "Title 18" and inserting "title 18".

The Commentary to §5E1.3 captioned "Background" is amended by striking "Title 18" and inserting "title 18", and by striking "The Victims" and inserting "the Victims".

The Commentary to §5E1.4 captioned "Background" is amended by striking "Titles" and inserting "titles".

The Commentary to §5G1.3 captioned "Background" is amended by striking "132 S. Ct. 1463, 1468" and inserting "566 U.S. 231, 236", and by striking "132 S. Ct. at 1468" and inserting "566 U.S. at 236".

Chapter Five, Part H is amended in the introductory commentary by striking "Part" each place such term appears and inserting "part".

Chapter Six, Part A is amended in the introductory commentary by striking "Part" and inserting "part".

Chapter Seven, Part A, Subpart 3(b) (Choice between Theories) is amended by striking "Title 21" and inserting "title 21".

The Commentary to §8A1.2 captioned "Application Notes" is amended in Note 3(G) by striking " 'Prior criminal adjudication' means" and inserting " 'Criminal Adjudication' means".

The Commentary to §8B1.1 captioned "Background" is amended by striking "Title 18" and inserting "title 18".

The Commentary to §8B2.1 captioned "Application Notes" is amended in Note 1, in the paragraph that begins " 'Governing authority' means", by striking "means the (A) the Board" and inserting "means (A) the Board".

The Commentary to §8C2.5 captioned "Application Notes" is amended in Note 1 by striking " 'prior criminal adjudication' " and inserting " 'criminal adjudication' ".

The Commentary to §8C3.2 captioned "Application Note" is amended in Note 1 by striking "the period provided for payment shall in no event exceed five years" and inserting "the period provided for payment shall be the shortest time in which full payment can reasonably be made".

Section 8C3.3(a) is amended by striking "its ability" and inserting "the ability of the organization".

The Commentary to §8E1.1 captioned "Background" is amended by striking "Title 18" and inserting "title 18".

Appendix A (Statutory Index) is amended—

by striking the following line reference:

"18 U.S.C. § 876          2A4.2, 2A6.1, 2B3.2, 2B3.3";

by inserting before the line referenced to 18 U.S.C. § 877 the following new line references:

| | |
|---|---|
| "18 U.S.C. § 876(a) | 2A4.2, 2B3.2 |
| 18 U.S.C. § 876(b) | 2B3.2 |
| 18 U.S.C. § 876(c) | 2A6.1 |
| 18 U.S.C. § 876(d) | 2B3.2, 2B3.3"; |

in the line referenced to 25 U.S.C. § 450d by striking "§ 450d" and inserting "§ 5306";

by striking the following line references:

| | |
|---|---|
| "33 U.S.C. § 1227(b) | 2J1.1, 2J1.5 |
| 33 U.S.C. § 1232(b)(2) | 2A2.4"; |

by inserting before the line referenced to 46 U.S.C. App. § 1707a(f)(2) the following new line references:

| | |
|---|---|
| "46 U.S.C. § 70035(b) | 2J1.1, 2J1.5 |
| 46 U.S.C. § 70036(b) | 2A2.4"; |

by striking the following line references:

| | |
|---|---|
| "50 U.S.C. App. § 462 | 2M4.1 |
| 50 U.S.C. App. § 527(e) | 2X5.2 |
| 50 U.S.C. App. § 2410 | 2M5.1"; |

and by inserting before the line referenced to 52 U.S.C. § 10307(c) the following new line references:

"50 U.S.C. § 3811          2M4.1
50 U.S.C. § 3937(e)       2X5.2
50 U.S.C. § 4610          2M5.1".

**Reason for Amendment:** This amendment makes technical, stylistic, and other non-substantive changes to the *Guidelines Manual*.

First, the amendment makes clerical changes to correct typographical errors in the following guidelines and commentary: §1B1.1 (Application Instructions); §1B1.3 (Relevant Conduct (Factors that Determine the Guideline Range)); §1B1.4 (Information to be Used in Imposing Sentence (Selecting a Point Within the Guideline Range or Departing from the Guidelines)); §1B1.10 (Reduction in Term of Imprisonment as a Result of Amended Guideline Range (Policy Statement)); §2D2.3 (Operating or Directing the Operation of a Common Carrier Under the Influence of Alcohol or Drugs); §2G2.1 (Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production); §2H3.1 (Interception of Communications; Eavesdropping; Disclosure of Certain Private or Protected Information); §2M1.1 (Treason); §2T1.1 (Tax Evasion; Willful Failure to File Return, Supply Information, or Pay Tax; Fraudulent or False Returns, Statements, or Other Documents); the Introductory Commentary to Chapter Two, Part T, Subpart 2 (Alcohol and Tobacco Taxes); the Introductory Commentary to Chapter Two, Part T, Subpart 3 (Customs Taxes); the Introductory Commentary to Chapter Three, Part A (Victim-Related Adjustments); §3A1.1 (Hate Crime Motivation or Vulnerable Victim); the Introductory Commentary to Chapter Three, Part B (Role in the Offense); §3C1.1 (Obstructing or Impeding the Administration of Justice); the Introductory Commentary to Chapter Three, Part D (Multiple Counts); §3D1.1 (Procedure for Determining Offense Level on Multiple Counts); §3D1.2 (Groups of Closely Related Counts); §3D1.3 (Offense Level Applicable to Each Group of Closely Related Counts); §3D1.4 (Determining the Combined Offense Level); §4A1.3 (Departures Based on Inadequacy of Criminal History Category (Policy Statement)); §4B1.1 (Career Offender); §5C1.1 (Imposition of a Term of Imprisonment); §5E1.1 (Restitution); §5E1.3 (Special Assessments); §5E1.4 (Forfeiture); the Introductory Commentary to Chapter Five, Part H (Specific Offender Characteristics); the Introductory Commentary to Chapter Six, Part A (Sentencing Procedures); Chapter Seven, Part A (Introduction to Chapter Seven); §8B1.1 (Restitution — Organizations); §8B2.1 (Effective Compliance and Ethics Program); §8C3.3 (Reduction of Fine Based on Inability to Pay); and §8E1.1 (Special Assessments — Organizations).

Second, the amendment makes clerical changes to the Commentary to §§1B1.11 (Use of Guidelines Manual in Effect on Date of Sentencing (Policy Statement)) and 5G1.3 (Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment), to update citations of

Supreme Court cases. In addition, the amendment makes technical changes to (1) the Commentary to §2K2.4 (Use of Firearm, Armor-Piercing Ammunition, or Explosive During or in Relation to Certain Crimes), to add a missing reference to 18 U.S.C. § 844(o); (2) the Commentary to §2M6.1 (Unlawful Activity Involving Nuclear Material, Weapons, or Facilities, Biological Agents, Toxins, or Delivery Systems, Chemical Weapons, or Other Weapons Of Mass Destruction; Attempt or Conspiracy), to delete the definitions of two terms that are not currently used in the guideline; (3) the Commentary to §§2M5.3 (Providing Material Support or Resources to Designated Foreign Terrorist Organizations or Specially Designated Global Terrorists, or For a Terrorist Purpose) and 2T1.1 (Tax Evasion; Willful Failure to File Return, Supply Information, or Pay Tax; Fraudulent or False Returns, Statements, or Other Documents), to correct references to the Code of Federal Regulations; and (4) the Commentary to §3A1.2 (Official Victim), to add missing content in Application Note 3.

Third, the amendment makes technical changes to the Commentary to §§2A4.2 (Demanding or Receiving Ransom Money), 2A6.1 (Threatening or Harassing Communications; Hoaxes; False Liens), and 2B3.2 (Extortion by Force or Threat of Injury or Serious Damage), and to Appendix A (Statutory Index), to provide references to the specific applicable provisions of 18 U.S.C. § 876 (Mailing threatening communications).

Fourth, the amendment makes certain stylistic and technical changes to the Commentary to §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking). It revises the Drug Conversion Tables at Application Note 8(D) and the Typical Weight Per Unit Table at Application Note 9 to reorganize the controlled substances contained therein in alphabetical order to make the tables more user-friendly. The amendment also makes minor changes to the controlled substance references to promote consistency in the use of capitalization, commas, parentheticals, and slash symbols throughout the Drug Conversion Tables. In addition, the amendment makes clerical changes throughout the Commentary to correct certain typographical errors. It also amends the Background Commentary to add a specific reference to Amendment 808, which replaced the term "marihuana equivalency" with the new term "converted drug weight" and changed the title of the "Drug Equivalency Tables" to "Drug Conversion Tables."

Fifth, the amendment makes clerical changes to reflect the editorial reclassification of certain sections of the United States Code. Effective December 1, 2015, the Office of Law Revision Counsel eliminated the Appendix to title 50 of the United States Code and transferred the non-obsolete provisions to new chapters 49 to 57 of title 50 and to other titles of the United States Code. To reflect the new section numbers of the reclassified provisions, the amendment makes changes to §2M4.1 (Failure to Register and Evasion of Military Service), §2M5.1 (Evasion of Export Controls; Financial Transactions with Countries Supporting International Terrorism), and Appendix A. Similarly, effective September 1, 2016, the Office of Law Revision Counsel also transferred certain provisions from chapter 14 of title 25 of the United States Code to four new chapters in title 25 to improve the organization of the title. To reflect these changes, the amendment makes further changes to Appendix A.

Sixth, the amendment makes technical changes to the commentary of several guidelines in Chapter Eight (Sentencing of Organizations). It replaces the term "prior criminal adjudication," as found and defined in Application Note 3(G) of §8A1.2 (Application Instructions — Organizations), with "criminal adjudication" to better reflect how that term is used throughout Chapter Eight. The amendment also makes conforming changes to the Commentary to §8C2.5 (Culpability Score) to account for the new term. In addition, the amendment revises Application Note 1 of §8C3.2 (Payment of the Fine — Organizations) to reflect the current language of subsection (d) of 18 U.S.C. § 3572 (Imposition of a sentence of fine and related matters), providing that if the court permits other than immediate payment of a fine or other monetary payment, the period provided for payment shall be the shortest time in which full payment can reasonably be made.

Finally, the amendment makes clerical changes to provide updated references to certain sections of the United States Code that were redesignated by legislation. The Frank LoBiondo Coast Guard Authorization Act of 2018, Pub. L. 115–282 (2018) (hereinafter "the Act"), among other things, established a new chapter 700 (Ports and Waterway Safety) in subtitle VII (Security and Drug Enforcement) of title 46 (Shipping) of the United States Code. Section 401 of the Act repealed the Ports and Waterways Safety Act of 1972, previously codified in 33 U.S.C. §§ 1221–1232b, and restated its provisions with some revisions in the new chapter 700 of title 46, specifically at 46 U.S.C. §§ 70001–70036. Appendix A includes references to Chapter Two guidelines for both former 33 U.S.C. §§ 1227(b) and 1232(b). The amendment revises Appendix A to delete the references to 33 U.S.C. §§ 1227(b) and 1232(b) and replace them with updated references to 46 U.S.C. §§ 70035(b) and 70036(b). The Act did not make substantive revisions to either of these provisions.